Dear Chief Kelly:
You seek an opinion from our office and ask whether the Board of Commissioners for Allen Parish Fire Protection District 5 can lawfully dismiss a volunteer fireman, when the fire chief has taken no action against him and would prefer to keep his services as a firefighter. You would like to know generally, under the law, what are the duties of a fire chief and what are the duties of a board of commissioners of a fire protection district.
You further informed us that your fire protection district has basically a volunteer fire department wherein you are the only regularly paid member and all others are volunteer firefighters. Although the definition of a volunteer firefighter member in R.S. 23:1036(D)(4) is for the purpose of that Section of law only, the definition is a fair description generally of any volunteer firefighter and describes volunteer firefighters as "individuals who are carried on the membership list of the [firefighting] organization as active participants in the normal [firefighting and training] functions of the organization and who receive nominal or no remuneration for their services." It should be noted that the Louisiana Legislature in R.S. 23:1036(A) announced, "It is hereby declared by the Legislature of Louisiana that the fire protection and suppression services provided by volunteer fire companies are vital to the protection of the safety of the citizens of the state."
Your fire protection district, per se, in Louisiana law is governed generally by Part I of Chapter 7 of Title 40 of the Revised Statutes of 1950 [R.S. 40:1491 et seq.]. Other miscellaneous statutes can also have some relevance to the district.
R.S. 33:2101, read together with R.S. 40:1492, authorizes fire protection districts to enter into contracts with private volunteer fire departments to procure their firefighting services for the district.See Attorney General Opinion No. 06-0171 (copy enclosed). If the situation in your fire protection district was one where the board of commissioners of the district had a contract with a private volunteer fire department, then the board would have no legal power to terminate any volunteer firefighter, unless that power was *Page 2 
specifically and explicitly spelled out in the terms of the contract itself. Only the chief or whoever was in charge of the private volunteer fire department would have the power to terminate a volunteer firefighter of that fire department. However, you have informed us that there is no such contract between the board of commissioners and the volunteer fire department in your fire protection district and that you are employed by the district itself.
R.S. 40:1499 provides for the general powers of the board of commissioners of a fire protection district and read as follows:
 "The board shall adopt its rules and procedure and fix the time and place of its regular meetings. Generally, it has such powers and shall perform such duties as are customary for the governing bodies of taxing districts and political subdivisions, including the right to levy taxes and to operate and control the property acquired by the district. It may do all things necessary to carry out the purposes for which the district was created."
Relating to the questions you have asked, the two most important portions of the above statute are "has such powers and shall perform such duties as are customary for the governing bodies of . . . political subdivisions" and "may do all things necessary to carry out the purposes for which the district was created."
In Louisiana, the quintessential political subdivision upon which almost any "political subdivision" is more or less modeled is the parish. The governing body of the parish is usually the police jury. R.S. 33:1236 provides for the powers of a police jury. Again, relating to the questions you have asked, R.S. 33:1236 provides, in pertinent part:
 "The police juries and other parish governing authorities shall have the following powers:
 * * * "(10) To appoint all officers necessary to carry into execution the parish regulations, and to remove them from office.
 * * * "(51) To enact ordinances defining parish employees and delineating the rights, duties, and privileges of parish employees.
 * * *
In terms of a fire protection district, by analogy, it means that the board of commissioners of the fire protection district has the power to appoint and to remove all officers necessary to carry into execution the fire protection laws, rules, and regulations. *Page 3 
Such officers would, of course, include the fire chief, who may, if he is a regularly paid member of the fire department, be in the classified civil service. See, in general, R.S. 33:2531 et seq. and, in particular, R.S. 33:2541 (A)(1); see also Attorney General Opinions 98-267, 99-41, and 05-0249 (copies enclosed).
It also means that the board of commissioners of a fire protection district is charged with the power and duty to make written policies, in the form of rules or regulations, governing the employees of the fire protection district and delineating their rights, duties, and privileges. Used in this sense, the term employee [of the fire department] is an all-inclusive term of the broadest meaning and encompasses the volunteer firefighters of the fire department. [See, for example, the terminology used in R.S. 42:1119(C)(6) ("the employment of a volunteer firefighter"; "any decision regarding the employment of a volunteer firefighter").] Such is the case because, in this law, the legislature is mandating the governing board of the political subdivision to make provisions for all of the individuals who are put to the task of executing the functions of the political subdivision.
The historical roots of such a law comes from early England and the origins of the concept of due process as the law of the land. In the Middle Ages in Great Britain, there was, in essence, a "tug-of-war" from time to time between the king and the nobility (the barons), as the king would make many of his own decisions without counsel, which decisions adversely affected the person, life, liberty, possessions, or title of a member or members of the nobility. King Alfred the Great had provided a codification of the prevailing laws and customs in his England, known as the Code of Alfred [or Alfred's "Deemings" or Book of Dooms (Book of Laws)], which purported to protect the nobility and give them the ability to know where they stood with the king, instead of having to await the whim and caprice of the king's sudden decisions. These laws were expanded and became to be, more or less, relied on by the people of England. Then, Henry I issued the Charter of Liberties, or Coronation Charter, upon his ascension to the throne; it addressed abuses of royal power by Henry's predecessor and became the forerunner of the Magna Carta. But monarchs from time to time ignored these guarantees. This "tug-of-war" again arose in the time of King John. This time the nobility rebelled and forced King John to sign the Magna Carta in 1215 in a meadow at Runnymede. This "Great Charter" again restricted the arbitrary and capricious power of the king in favor of laws which allowed the nobility to know where they stood and upon which they could rely. Although King John himself later ignored this document, it was reissued by his successor in somewhat different form and then was enacted into law by a later Parliament. In enacted form, Clause XXIX (clause 29) reads,
 "XXIX. NO Freeman shall be taken or imprisoned, or be disseised of his Freehold, or Liberties, or free Customs, or be outlawed, or exiled, or any other wise destroyed; nor will We not pass upon him, nor condemn him [or deal with him], but by lawful judgment of his Peers, or by the Law of the Land. We will sell to no man, we will not deny or defer to any man either Justice or Right." *Page 4 
See The United Kingdom Statute Law Database [http://www.statutelaw.gov.uk/content. aspx?LegType=AII+Legislation 
searchEnacted=0 extentMatchOnly=0 confersPower= 0 
blanketAmendment=0 sortAlpha=0 PageNumber=0 NavFrom=0 
parentActiveText Docld=1517519 ActiveTextDocld=1517542 
filesize=1804].
The concept is that there shall be, in advance, written rules to which everyone will adhere ["the Law of the Land"] and that life, liberty, property, etc. can only be taken from a person by the king for a violation of those rules and not by the king's whim, caprice, or other arbitrary decision-making. And, procedurally, it later followed that to make sure the deprivation of life, liberty, or property was based on the law of the land and not on the king's whim or caprice, the person affected had the right to a trial or hearing thereon, to notice of the claimed violation and notice of the hearing to be held thereon, and to present evidence on his own behalf. The trial or hearing was to inquire into the claimed violation and to come to a rational decision based on the facts in evidence and the law of the land applicable thereto.
From these historical roots come the Due Process clauses of our federal and state constitutions, which mean much the same thing, except that these clauses run in favor of all persons against the arbitrary, capricious, or unreasonable actions of federal, state, or local governments (or their boards, commissions, or agencies) [which, in this country, has taken the place of the English crown]. See generally 16B Am. Jur. 2d "Constitutional Law" §§ 897 919; see also the explanations in Davidson v. New Orleans, 96 U.S. 97, 101-106, 24 L.Ed. 616 (1877) and in Missouri Pac. Ry. Co. v. Humes, 115 U.S. 512, 519, 6 S.Ct. 110, 112,29 L.Ed. 463 (1885) and the summarizing statement in U.S. v. Yount, 267 F. 861 (D.C. Cir. 1920).
Thus, under the due process standard, the board of commissioners of the fire protection district would not be allowed to dismiss a firefighter or remove his name from the list of the fire department through a simple board decision based on its own arbitrary whim and caprice, without some advanced written policies in the form of rules and regulations delineating the rights, duties, and privileges of the district firefighters, and without a fair hearing, with sufficient notice to the firefighter and an opportunity for him to be heard and to present evidence, in order to test whether the firefighter violated one of his duties set forth in these written policies.
[Although the following statutory provisions are applicable only to the classified civil service, R.S. 33:2560(A)(1) through (8) and (13) through (15) probably provide adequate reasons for dismissal also of a volunteer firefighter and could be used in such written policies — to wit: (1) Unwillingness or failure to perform the duties of his position in a satisfactory manner; (2) the deliberate omission of any act that it was his duty to perform; (3) the commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy; (4) insubordination (especially when fighting a fire or in training to fight a fire); (5) conduct of a discourteous or wantonly offensive nature toward the public or toward any municipal officer or employee, and any dishonest, disgraceful or immoral conduct; (6) drinking vinous or spirituous liquors while on duty or reporting for duty while under the influence of intoxicating beverages; (7) the use of intoxicating liquors or habit forming drugs, liquids or preparations to an extent *Page 5 
which precludes the employee from performing the duties of his position in a safe or satisfactory manner; (8) the conviction of a felony; and (13) the development of any defect or physical condition which precludes the [firefighter] from properly performing the duties of his position or the development of any physical condition that may endanger the health or lives of fellow [firefighters]; (14) the willful violation of any [lawful] rule, regulation or order adopted under [the] authority of the laws governing the district; (15) any other act or failure to act sufficient to show the offender to be an unsuitable or unfit person to be working in the fire service.]
Even though, as you describe the facts and proceedings in this case, it appears that the fire protection board committed violations of due process in the manner of dismissing the volunteer firefighter, our constitutions require, for a successful lawsuit against the board, that the volunteer firefighter show that he has a sufficient property interest of which he was deprived by such violation. See, for example, Lollar v. Baker,196 F.3d 603 (5th Cir. 1999); Muncy v. City of Dallas, TX, 335 F.3d 394
(5th Cir. 2003); Bolton v. City of Dallas, TX, 472 F.3d 261 (5th Cir. 2006); and the authorities cited therein. The mere fact of employment as a volunteer firefighter alone is insufficient; one must look to the applicable statutes, ordinances, rules, or regulations to determine whether and precisely what property interests, if any, state or local law may have given him in this employment. Id.
If the dismissed firefighter were paid regularly as a full-time or part-time permanent firefighter, he would have the protection of being in the classified civil service and of having the right to appeal his dismissal to a civil service board, which could reverse the dismissal and re-instate him as a firefighter. See R.S. 33:2560(A) and 2561 and Attorney General Opinions 98-267, 99-41, and 05-0249 and the authorities cited therein (copies enclosed). Thus, state constitution and state law can be said to have given him, for federal due process purposes, a clearly protected property interest in his continuing employment as a firefighter. On the other hand, a volunteer firefighter serves under different rules.
Of course, the board of commissioners could grant a volunteer firefighter a sufficient property interest in his position with the fire department when it adopts rules or ordinances delineating the rights, duties, and privileges of the firefighters of the district. Here, you have informed us that the board of your fire district has never adopted any.
However, the legislature has provided some interests incidental to volunteer firefighting. For example, the legislature has provided a fire service bill of rights in R.S. 33:2012, has provided for disability and death benefits in R.S. 33:2036 for those injured or killed while engaged in their firefighting duties, has authorized the state fire marshall in R.S. 40:1593 to obtain medical and life insurance for those injured or killed while engaged in their firefighting duties, and has authorized the state fire marshall in R.S. 23:1036 to obtain worker's compensation insurance for those injured while engaged in their firefighting duties. And, of course, it is possible that R.S. 40:1499, read together with R.S. 33:1236(51), could be interpreted by the courts either to provide the necessary due process property interests in volunteer firefighters' continued employment as such or to mandate in their favor a statutory guarantee of due process in connection with their *Page 6 
standing as volunteer firefighters before they can be dismissed. Whatever the case, it is still up to the dismissed volunteer firefighter and his attorney to show that he has adequate property interests at stake in his continuing to be a volunteer firefighter on the list of the fire department — that is, property interests which are sufficient to be protected by due process.
It appears that this issue is still open and has not been definitively resolved by a final court judgment which has interpreted all the relevant statutes and provisions. Thus, we do not know at this time for certain what the outcome of a lawsuit in the courts over this issue might be. Therefore, our legal advice is that if, as you say, the dismissed firefighter was not dismissed for reason of being a danger to himself or others in respect to his firefighting skills and duties (but rather because he was a "whistle-blower" trying to stop illegal expenditures of fire protection district monies or other improprieties) and the dismissal was carried out without due process, it would be better to reinstate the dismissed firefighter voluntarily rather than to wait for him to file a lawsuit against the board and possibly obtain court interpretations in his favor and against the board.
As to the powers and duties of the board and the fire chief generally and with respect to R.S. 40:1499, read together with R.S. 33:1236(10) and (51), it is our opinion that, especially in the usual cases, the board has the power to appoint the fire chief to execute the firefighting policies of the district. The chief should have the power and authority to hire, train, discipline, and terminate the other firefighters under him, including all volunteer firefighters. The board should issue written policies in the form of rules or regulations delineating the rights, duties, and privileges of all the firefighters in the district, including volunteer firefighters, and the chief must respect those rights, duties, and privileges in dealing with the firefighters under him.
The last sentence of R.S. 40:1499, however, does grant to the board the power to "do all things necessary to carry out the purposes for which the district was created." Hence, if, in accordance with the requirements of due process, the board would dismiss a volunteer firefighter, even without the chiefs concurrence, because he was, under all the evidence presented at the hearing, actually a danger to himself or others in the manner of carrying out his firefighting duties, we do not think that we could say the board did not have the power to do so. If, however, the board dismissed a volunteer firefighter, especially one who was good at his firefighting duties, because he was a "whistle-blower" who was trying to prevent or stop the illegal expenditures of fire protection district funds or other such improprieties, such a dismissal by the board would not be lawful, because such a dismissal does not "carry out the purposes for which the district was created" — namely, firefighting in order to save the lives and property of those residing in the district.
Moreover, the legislature has strong statutory policies against reprisals for "whistle-blowing" and even has enacted some "qui tam" statutes allowing "whistle-blowers" in some circumstances to file suit in the name of the state or agency to recover for the state or agency illegally spent funds and, if successful in such recovery effort, to keep a small percentage of the recouped funds for himself. In particular, R.S. 42:1169, a provision of the Code of Ethics, prohibits reprisals against any public employee who *Page 7 
discloses improper acts to the proper authorities. For purposes of the Code of Ethics, a "public employee" is anyone, compensated or not, who performs any governmental function [such as firefighting on behalf of a fire protection district] or who is under the supervision or authority of an elected official or another employee of the governmental entity [such as the fire chief]. R.S. 42:1102(18). In additon, the legislature has enacted the general employer-employee "whistle-blower" protection statute, R.S. 23:967. The dismissed volunteer firefighter and his attorney would have to make sure that he fell within the definitions provided in connection with these legislative acts; however, he could probably call the State Board of Ethics in Baton Rouge to find out whether he falls within the protection of the ethics law and possibly seek the protection of that board.
We trust that this opinion has adequately answered your request. If you need additional legal information or advice, please feel free to ask it of us. With warmest regards, we remain
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 THOMAS S. HALLGAN Assistant Attorney General
 JDC/TSH/sfj *Page 1 
 ATTACHMENT
OPINION NUMBER 98-267
August 3 1998.
84 — Parishes
LSA-R.S. 33:2531
LSA-R.S. 33:2533
LSA-R.S. 33:2535 LSA-R.S. 33:2536
LSA-R.S. 33:2541
LSA-R.S. 33:2451A(1-9)
A single full-time firefighter requires Plaquemine Parish to establish a separate firefighter civil service system.
Mr. Kevin Conner Council Attorney Plaquemines Parish Government P.O. Box 538 Belle Chasse, LA 70037
Dear Mr. Conner:
This office is in receipt of your recent opinion request in regard to firefighters and civil service. Specifically, you ask the following three questions:
 1. Does a single full-time firefighter have to be placed in the Civil Service System?
 2. Does a part-time paid firefighter have to be placed in the Civil Service System?
 3. Assuming that either question one or two is answered in the affirmative, can the Plaquemines Parish Government utilize its own Civil Service System and place the firefighter in a separate category underneath that system, or must an entirely new civil service system dedicated to firemen be established?
As you recognize, this office has previously rendered opinions regarding this matter. Most recently, Atty. Gen. Op. No. 95-37, which cited Atty. Gen. Op. Nos. 94-441, 93-728, and 93-728(A), concluded that a "regularly paid fire department" must be placed in the civil service system as required by Art. X, Sec. 16 of the Louisiana Constitution of 1974. These previous opinions, following the interpretation of the State Examiner, say that one full-time firefighter meets the requirement of a "regularly paid fire department" and therefore requires a civil service system.
In reviewing LSA-R.S. 33:2533, which defines terms used when referring to the fire and police civil service law, we find that there is no definition for part-time paid firefighters. LSA-R.S. 33:2531 mandates that any permanent appointment for a paid firefighter shall occur only after certification pursuant to the general system. This statute does not *Page 2 
make a distinction between full-time and part-time firefighters. It simply refers to any permanent appointment. Therefore, it is our opinion that under this statute, a part-time paid firefighter should be placed in a civil service system as long as his appointment is permanent and he meets the test set out in LSA-R.S. 33:2541. This statute must be considered when determining whether an employee is classified or unclassified. In order to be classified, the employee must have as a primary duty one of the duties listed in LSA-R.S. 33:2541A(1-9). Therefore, if a part-time firefighter does not have one of the listed duties as his or her primary duty, then he or she should be unclassified.
In regard to your third question, LSA-R.S. 33:2535 and 33:2536 mandate the creation of "The Fire and Police Civil Service" and the fire and police civil service board, respectively. LSA-R.S. 33:2535 creates a classified civil service system in each parish government. LSA-R.S. 33:2536
sets out the requirements for creating a fire and police service board. It is our opinion that Plaquernines Parish must create a civil service system for firefighters separate and apart from the government civil service system if it is operating a regularly paid fire department. This is consistent with Atty. Gen. Op. Nos. 93-728(A) and 93-354.
In conclusion, it is the opinion of this office that (1) a single full-time firefighter must be placed in the civil service system; (2) a part-time paid firefighter should not be placed in a civil service system if he or she does not meet the "primary duty" test; and (3) Plaquemines Parish must create a separate civil service system for firefighters as long as it is operating a regularly paid fire department.
We hope this sufficiently answers your questions, but if we can be of further assistance, do not hesitate to contact us.
 Yours very truly,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 THOMAS S. HALLIGAN
 Assistant Attorney General
 ROBERT B. BARBOR
 RPl.RBB.glb *Page 1 
 ATTACHMENT
OPINION NO. 98-41
May 26, 1998.
OPINION NO. 41
 103 SCHOOLS AND SCHOOL DISTRICTS — PENSION BENEFITS, TEACHERS'RETIREMENT SYSTEM
 183-A SCHOOL EMPLOYEES-RETIREMENT SYSTEM
LSA-R.S. 42:79l LSA-R.S. 11:1132
LSA-R.S. 11:191 LSA-R.S. 11:191
LSA-R.S. I1:191B LSA-R.S. 11:192
LSA-R.S. 17:893 LSA-R.S.17:894
LSA-R.S. 42:697 LSA-R.S.11.158

1) It appears that pursuant to LSA-R.S. 42:701 the St. Landry Parish School Board was in error by not offering the employees-in-question an opportunity to select and contribute to the retirement system of their choice.
2) The School Board will be responsible for paying the difference between the dollar amount required to place these employees with the years of credit they should have had with Employees' Retirement System as opposed to the credit they have with the Teachers' Retirement System. Additionally, once these employees have been given the years of credit they should have had with the Employees' Retirement System please refer to LSA-R.S II:I9IB for the specifics on an employee purchasing the service credit to the retirement system dun they were not allowed to become a member of while LSA-R.S. 42:701 was in effect.
Mr. Gerard Caswell 142 North Second Street Post Office Box 1600 Eunice, Louisiana 70535
Dear Mr. Caswell:
I am in receipt of your request for an Attorney General's opinion on behalf of the St. Landry Parish School Board. You indicate that the School Board had employees who began their employment in 1977 as teachers' aides and then in 1978 became bus drivers in addition to being teachers' aides. You state that when the employees began employment in 1977 as teachers' aides, deductions from their salaries were properly made and put into the Teachers' Retirement System. You also state that there is no dispute that teachers' aides were employees who fell within the jurisdiction of the Teachers' Retirement System. When the employees also became bus drivers there is no dispute that the bus drivers were employees that fall under the jurisdiction of the Louisiana School Employees' Retirement System. However, as you indicated, the law prior to September 6, 1991, prohibited an employee from contributing to more than one public retirement system despite dual employment.
You ask the following questions in your request:
 1) Whether or not LSA-R.S. 42:701 required the School Board as the employing agency to offer any employees holding dual employment and eligible for both the Teachers' Retirement System and the Louisiana School Employees' Retirement System to be given a choice as to which retirement system the employee wished to be a member. Specifically, you ask, as of January 1, 1978, did R.S. 42:701
require the School Board to offer an employee holding dual employment the opportunity to choose the Louisiana School Employees' Retirement System rather than the Teachers' Retirement System that they had originally been placed into in 1977 when hired as teachers' aides.
 2) If the School Board did have a requirement to offer the employees a choice *Page 2 
as to which retirement system the employees wished to belong, then is the School Board's failure to give that choice to the employee amount to an administrative error as referred to in LSA-R.S. 11:1132?
LSA-R.S. 42:701 was redesignated as LSA-R.S. 11:191 pursuant to Acts 1991, No. 74 § 3. However, a review of LSA-R.S. 42:701 is necessary since it was in effect at the time this situation occurred.
LSA-R.S. 42:701 provided the following:
 Notwithstanding any other provisions of law to the contrary, and particularly R.S. 17:893 and R.S. 17:894, any person who is employed by more than one public agency within this state, and who, by reason of such employment, is eligible, as a condition of such employment, to be a member of the public retirement system or fund applicable to employees of each of such public agencies, shall not be allowed, on or after
January 1, 1978, to be a contributing member of more than one such retirement system of the member's choice. The retirement system or systems of which the employee chooses not to continue active membership in, shall refund to such member all employee contributions for the period during which he contributed to more than one retirement system. Such person shall contribute only to the retirement system in which he continues membership, on the salary from the agency which allows such membership. All laws which require him to join a retirement system or fund as a condition of employment shall not be applicable. The employee may retain only one year of credit in the retirement system he chooses to keep his membership in for each year that he was a member of more than one system. He may retain any other credit if it was earned during a period when he was a member of only one retirement system. If the member has military service credit in any system or systems, he shall only be allowed such military service in one system, and such military service credit shall be limited to a maximum of four years. Any of the above mentioned credit that the member is allowed to retain under this Section may be used by the member, if the member takes advantage of R.S. 42:697. (Emphasis added).
LSA-R.S. 11:191A which was effective June 25, 1991, requires dual membership in more than one retirement system when a person has dual employment. However, this does not apply when one position is in a municipal retirement system. Section B allows any person who is a member of any public retirement system on September 6, 1991, and who has not been allowed to become a member and to make contributions to the retirement system or fund to purchase the service credit to which he would have been entitled. Section A B state the following:
 A. Any person who is employed in more than one public employment within this *Page 3 
state, and who, by reason of such employment is eligible, as a condition of such employment, to be a member of the public retirement system or fund applicable to employees in each of such public employments, shall be a contributing member of each such retirement system or fund during the term of his employment. In no event shall such person be allowed to earn more than one year of service credit in any one year. Service credit earned in more than one retirement system or fund in any one year shall not be transferred or recognized reciprocally to attain more than one year of service credit in any one system in any one year.
 B. Any person who is a member of any public retirement system or fund on September 6, 1991, who has been employed in any public employment within the state and who has not been allowed to become a member of and to make contributions to the retirement system or fund applicable to employees in such public employment shall be allowed to purchase the service credit to which he would have been entitled in the system had he been an active contributing member of the retirement system or fund during the full term of his employment, by paying to the retirement system or fund an amount that totally offsets the actuarial cost of the receipt of the service credit. The employer for that employment may pay one-half of the actuarial cost of the receipt of the service credit; however, if the employer pays one-half of the actuarial cost for one employee, the employer shall pay one-half of the actuarial cost for all employees purchasing service credit under this Section provided the respective retirement system has a policy, in effect prior to August 15, 1995, for purchase of such service credit. If a retirement system does not have a policy for purchase of service credit as provided in this Subsection, then the employee shall pay the entire actuarial cost of the receipt of service credit provided in this Section.
After reviewing the applicable statutes, it appears that the School Board was in error by not offering the employees-in-question an opportunity to select and contribute to the retirement system of their choice. LSA-R.S.42:701 specifically states that an individual shall be allowed to contribute to a retirement system of his choice.
In your second question, you ask if the first question is in the affirmative, whether the School Board's failure to give that choice to the employee amounts to an administrative error as referred to in LSA-R.S. 11:1132.
LSA-R.S. 11:1132 states:
 Whenever it is discovered that due to the administrative error on the part of an employing agency, an active member of this system has not received retirement credit, upon application of the member, and his payment to the system of an amount *Page 4 
equal to the employee contributions that he should have made, he shall be entitled to the credit. Immediately following the application and payment by the member, the employing agency administratively at fault shall pay to the retirement system an amount calculated in accordance with the provisions of R.S. 11:158, less an amount equal to the amount paid by the member.
After a review of the law and facts, it would appear that the School Board did make an administrative error by not allowing these employees to select the Retirement System of their choice. Therefore, the School Board will be responsible for paying the difference between the dollar amount required to place these employees with the years of credit they should have had with Employees' Retirement System as opposed to the credit they have with the Teachers' Retirement System.
Once these employees have been given the years of credit they should have had with the Employees' Retirement System please refer to LSA-R.S.11:191B for the specifics on an employee purchasing the service credit to the retirement system that they were not allowed to become a member of while LSA-R.S. 42:701 was in effect. The employees-in-question then have the option of purchasing back the years of credit they could have had with the Teachers' Retirement System. Remember an employer may pay up to one-half of the actuarial cost of the service credit. However, if the employer pays one-half of the actuarial cost for one employee, the employer shall pay one-half of the actuarial cost for all employees purchasing service credit under this section provided the respective retirement system has a policy in effect prior to August 15, 1995, for purchase of such service credit.
I hope this opinion sufficiently addresses you concerns.
 Very truly yours,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 BETH CONRAD LANGSTON
 ASSISTANT ATTORNEY GENERAL
 RPI/BCL/sc *Page 1 
 ATTACHMENT
OPINION 05-0249
July 25, 2005.
47-A-1 Fire Protection District
 71-1-1 Municipal Fire Police Civil Service
 R.S. 33:2531; R.S. 33:2541(A)(1-9)
 Civil Service requirements are applicable to any paid firefighter in avolunteer fire department as constituting a regular paid firedepartment.
Mr. R. Lane Pittard
1st Assistant District Attorney
Bossier Parish Courthouse P.O. Box 69 Benton, LA 71006
Dear Mr. Pittard:
On behalf of the South Bossier Volunteer Fire Department (Fire District Two) you ask the following question:
 Does the hiring of three (or more) paid firemen who are full-time personnel, a paid part-time secretary/firefighter, a paid part-time treasurer, and two or more paid part-time firefighters constitute a "regularly paid fire department" which would require us to become Civil Service?
In other words, you ask if Civil Service Laws are applicable to this volunteer fire department with regularly paid employees. Our response to your question is "yes".
Article X, Section 16 of the Louisiana Constitution of 1974 provides as follows:
 A system of classified fire and police civil service is created and established. It shall apply to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to all parishes and fire protection districts operating a regularly paid fire department.
By constitutional mandate, a "regularly paid fire department" must be placed in the civil service system as required by LA-Const. Art X § 16 (1974). The opinions of this office, following the interpretation of the State Examiner for Municipal Fire and Police Civil Service reflect that one fill-time firefighter meets the requirement of a "regularly paid fire department" and therefore requires a civil service system. See Attorney General Opinions 01-379, 99-41, 94-441, 94-122, and 93-728(A), copies attached.
Thus, a singe full-time paid firefighter must be placed in the civil service system. *Page 2 
You also reference the hiring of part-time personnel. A part-time paid firefighter should be placed in the civil service system where (1) his appointment is permanent pursuant to R.S. 33:2531[1] and (2) he has as a primary duty one of the duties listed in R.S. 33:2541 (A)(1-9), as provided:
 § 2541. Classified and unclassified service
 A The classified service shall comprise every position, except those included in the unclassified service, to which the right of employee selection, appointment, supervision, and discharge is vested in the government of the municipality, parish or fire protection district as the case may be, under which the fire or police service functions, or in an officer or employee thereof, and which has as its primary duty and responsibility one of the following:
 (Fire) 1. The chief and assistant chiefs; the intradepartmental division, bureau, squad, platoon and company officers of the fire and police department.
 2. Fire fighting and police.
 3. Fire prevention; inspection.
 4. Driving, tillering and operation of fire apparatus.
 5. Operation and maintenance of radio, fire alarm or signal system.
 6. Fire and police department instructors in employee training.
 7. Fire salvage and overhauling services, and first aid.
 8. Automotive or fire and police apparatus repairs, if such service is operated exclusively by and for the fire and police department.
 9. Secretary to the chief and departmental records clerk.
Note that if a firefighter does not have one of the above listed duties as a primary duty, then he should be placed in the unclassified service. Moreover, employees (whether part-time or full-time) which fall within the following quoted provisions of R.S. 33:2541 (B) are considered unclassified: *Page 3 
B. The unclassified service shall comprise the following:
 (1) All officers, employees and positions of employment in the municipal, parish or fire protection district government not having as a principal duty one of the duties hereinabove provided in the classified service.
 (2) Officers elected by popular vote and persons appointed to fill vacancies to elective offices.
 (3) Secretaries, stenographers and all clerical positions not specifically included in the classified service.
 (4) Janitors, porters, elevator operators, chefs, kitchen helpers and workers, mechanic's helpers, car washers, unskilled labor or any part-time or temporary employee.
 (5) Any position of employment, the duties of which are included in the classified service, to which the right of employee selection, appointment, supervision and discharge is vested in and with those other than the municipal, parish or fire protection district government or an officer or employee thereof.
In accord is Attorney General Opinion 98-267, copy attached.
Finally, since you reference Attorney General Opinion 93-728, please note that opinion was recalled by Opinion 93-728(A).
Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L. KILPATRICK
 ASSISTANT ATTORNEY GENERAL
 KLK.ams *Page 1 
 ATTACHMENT
OPINION NUMBER 98-267
August 3, 1998.
84 — Parishes
 LSA-R.S. 33:2531
 LSA-R.S. 33:2533
 LSA-R.S. 33:2535
 LSA-R.S. 33:2536
 LSA-R.S. 33:2541
 LSA-R.S. 33:2451A(1-9)
 A single full-time firefighter requires Plaquemine Parish to establisha separate firefighter civil service system.
Mr. Kevin Conner Council Attorney Plaquemines Parish Government P.O. Box 538 Belle Chasse, LA 70037
Dear Mr. Conner:
This office is in receipt of your recent opinion request in regard to firefighters and civil service. Specifically, you ask the following three questions:
 1. Does a single full-time firefighter have to be placed in the Civil Service System?
 2. Does a part-time paid firefighter have to be placed in the Civil Service System?
 3. Assuming that either question one or two is answered in the affirmative, can the Plaquemines Parish Government utilize its own Civil Service System and place the firefighter in a separate category underneath that system, or must an entirely new civil service system dedicated to firemen be established?
As you recognize, this office has previously rendered opinions regarding this matter. Most recently, Atty. Gen. Op. No. 95-37, which cited Atty. Gen. Op. Nos. 94-441, 93-728, and 93-728(A), concluded that a "regularly paid fire department" must be placed in the civil service system as required by Art. X, Sec. 16 of the Louisiana Constitution of 1974. These previous opinions, following the interpretation of the State Examiner, say that one full-time firefighter meets the requirement of a "regularly paid fire department" and therefore requires a civil service system.
In reviewing LSA-R.S. 33:2533, which defines terms used when referring to the fire and police civil service law, we find that there is no definition for part-time paid firefighters. LSA-R.S. 33:2531 mandates that any permanent appointment for a paid firefighter shall occur only after certification pursuant to the general system. This statute does not *Page 2 
make a distinction between full-time and part-time firefighters. It simply refers to any permanent appointment. Therefore, it is our opinion that under this statute, a part-time paid firefighter should be placed in a civil service system as long as his appointment is permanent and he meets the test set out in LSA-R.S. 33:2541. This statute must be considered when determining whether an employee is classified or unclassified. In order to be classified, the employee must have as a primary duty one of the duties listed in LSA-R.S. 33:2541 A(1-9). Therefore, if a part-time firefighter does not have one of the listed duties as his or her primary duty, then he or she should be unclassified.
In regard to your third question, LSA-R.S. 33:2535 and 33:2536 mandate the creation of "The Fire and Police Civil Service" and the fire and police civil service board, respectively. LSA-R.S. 33:2535 creates a classified civil service system in each parish government. LSA-R.S.33:2536 sets out the requirements for creating a fire and police service board. It is our opinion that Plaquemines Parish must create a civil service system for firefighters separate and apart from the government civil service system if it is operating a regularly paid fire department This is consistent with Atty. Gen. Op. Nos. 93-728(A) and 93-354.
In conclusion, it is the opinion of this office that (1) a single full-time firefighter must be placed in the civil service system; (2) a part-time paid firefighter should not be placed in a civil service system if he or she does not meet the "primary duty" test; and (3) Plaquemines Parish must create a separate civil service system for firefighters as long as it is operating a regularly paid fire department.
We hope this sufficiently answers your questions, but if we can be of further assistance, do not hesitate to contact us.
 Yours very truly,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 ROBERT B. BARBOR
 Assistant Attorney General
 RPI:RBB:glb *Page 1 
 ATTACHMENT
OPINION 93-728(A)
April 4, 2008.
Mr. Paul K. Daly State Examiner P.O. Box 44366 Baton Rouge, LA 70804-4366
Dear Mr. Daly:
As State Examiner of the Municipal Fire and Police Civil Service, you have asked this office to reconsider the conclusions of released opinions 93-728 and 93-354.
 ISSUE I
In released opinion 93-728, the author addressed what constitutes a "regularly paid fire department" for purposes of application of a system of classified fire civil service. LSA-Const. Art. X, Section 16 (1974) requires that such a system be created for all municipalities, parishes, and fire protection districts operating a "regularly paid fire department".
There is no jurisprudential or statutory authority defining a "regularly paid fire department". In 93-728, the author concluded that a volunteer fire organization with one paid employee is not sufficient for the establishment of fire civil service.
We reconsider our conclusion in opinion 93-728, having reexamined the holding in the case of Village of Varnado v. Varnado Fire Dept.,563 So.2d 946 (La.App. 1990). In Varnado, supra, the court did not address the issue of whether one regularly paid employee was sufficient to constitute a regularly paid fire department for purposes of eligibility to receive tax proceeds. Rather, the court concluded that there was no regularly paid fire department because there were no regularly paid employees during the time period in question. The case does not stand for the proposition that one regularly paid employee is insufficient to establish a regularly paid fire department for purposes of receipt of tax proceeds, nor for purposes of application of fire civil service. *Page 2 
The doctrine of contemporaneous construction provides that when an administrative body has, over a long period of time, placed an interpretation upon a legislative enactment, that interpretation is entitled to great weight in the determination of the meaning of the legislative enactment. Swetman v. Teachers' Retirement System,578 So.2d 149 (La.App. 1st Cir. 1991). However, when no ambiguity exists in the statute or the construction of the administrative body is clearly erroneous, this doctrine is inapplicable. Swetman, and citations therein.
This office is of the opinion that ambiguity is present because the definition of a "regularly paid fire department" is susceptible to varying interpretations. Further, the doctrine of contemporaneous construction is applicable as you advise your agency has for many years established "several boards which initially had only one or two full time employees". We therefore recall our conclusion in opinion 93-728, and defer to the interpretation of your agency concerning what may constitute a "regularly paid fire department", absent a juriprudential or statutory definition.
 ISSUE II
Regarding released opinion 93-354, this office affirms the conclusions stated therein. The author correctly concluded that a fire protection district operating a regularly paid fire department is required to create a classified fire and police civil service system.
Use of the word "shall" in LSA-Const. Art. X, Section 16 (1974), cited above is mandatory concerning the establishment of a fire and police civil service system to a "fire protection district operating a regularly paid fire department". Further, opinion 93-354 as written is consistent with our reconsideration of 93-728, stated herein.
Please contact this office should you need further assistance.
 Yours very truly,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L. KILPATRICX
 Assistant Attorney General
 RPI/KLK/93-728(A) *Page 1 
 ATTACHMENT
OPINION NUMBER 94-122
April 4, 2008.
Civil Service requirement are applicable to any paid firefighter in a volunteer fire department as constituting a regular paid fire department.
47-A-l Fire Protection District
71-1-1 Municipal Fire Police Civil Service
U.S. 40:1567
J. Wayne Landry, Esq. Assistant District Attorney Sixteenth Judicial District Courthouse Bldg., Suite 200 New Iberia, LA 70560-4583
Dear Mr. Landry:
This office is in receipt of your request for an opinion of the Attorney General in regard to the applicability of civil service to the Iberia Parish Fire Protection District No., 1. You indicate the Fire Protection District currently employs four full-time employees, being a coordinator and three full-time firefighters. The Fire Department is additionally staffed by a large number of volunteer firefighters.
Your questions are as follows:
 1. Do civil service requirements apply to the paid fireman and coordinator for the Iberia Parish Fire Protection District No. 1 and is it necessary that the Parish establish a civil service board to oversee these employees; and
 2. What constitutes a "regularly paid fire department" as stipulated in the law which creates and establishes classified fire and police civil service.
Article X, Section 16, La.Const. 1974, provides as follows:
 A system of classified fire and police civil service is created and established. It shall apply to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to all parishes and fire protection districts operating a regularly paid fire department. (Emphasis added.)
The requirement for civil service for firefighters applies to a "regularly paid fire department", and in your second question you ask what constitutes a regularly paid fire department. *Page 2 
In Atty. Gen. Op. No. 93-728(A) this office observed there is no jurisprudential or statutory authority defining a "regularly paid fire department", and found an ambiguity exists since the term is susceptible to varying interpretations. Therefore, it was concluded the doctrine of contemporaneous construction was applicable which provides when an administrative body has, over a long period of time, placed an interpretation upon a legislative enactment, that interpretation is entitled to great weight in determining the meaning of the legislative enactment.
You indicate that the administration for civil service for firemen and policemen has interpreted the provision relative to what constitutes a regular paid fire department to mean that any person in classified service who is compensated for his services constitutes a paid fire department, and this is the interpretation we must accept.
You recognize the answer to your first question would hinge upon whether or not the Iberia Parish Fire Protection District No. 1 operates a regularly paid fire department. Based upon an interpretation that any paid full-time firefighters constitutes a regularly paid fire department, it follows by the use of the word "shall" in Art. X, Sec. 16. La.Const., that it is mandatory there be the establishment of a fire and police civil service system by the employment of these four full-time firefighters.
We hope this sufficiently answers your question, but if we can be of further assistance, do not hesitate to contact us.
 Sincerely yours,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 BARBARA B. RUTLEDGE
 Assistant Attorney General
 BBR *Page 1 
 ATTACHMENT
OPINION NUMBER 94-441
April 4, 2008.
Ms. Diane B. Phillips Clerk of Council Iberia Parish Council Courthouse Bldg., Suite 410 300 Iberia Street New Iberia, LA 70560-4543
Dear Ms. Phillips:
This office is in receipt of your request for an opinion of the Attorney General in regard to establishment of a civil service system for the employees of Fire Protection District No. 1. You indicate the Iberia Parish Fire Protection District No. 1 Board is currently in the process of proceeding with the establishment of a civil service system and board for its employees, and the Iberia Parish Council has adopted a resolution in opposition to the creation of this system. Since there is a jurisdictional question, you ask whether the Iberia Parish Council or the Fire Protection District No. 1 has the authority to establish a civil service system for the employees of said fire district.
In Atty. Gen. Opinion No. 93-728(A) this office reconsidered Atty. Gen. Op. No. 93-728 and concluded by the use of the word "shall" in Art. X, Sec. 16 of the Constitution of 1974, a fire and police civil service system is mandatory for a "fire protection district operating a regularly paid fire department". It was further observed for the definition of a "regularly paid fire department" the conclusion of 93-728 was recalled which did not find paying one full-time fire fighter to augment and coordinate volunteers constituted operating "a regularly paid fire department". Instead, under the doctrine of contemporaneous construction, this office deferred to the interpretation of the State Examiner as to the requirement for civil service for a regularly paid fire department to include where there is only one or two full time employees. Atty. Gen. Op. No. 93-354 was affirmed that held "a fire protection district operating a regularly paid fire department is required to create a classified fire and police civil service system."
Subsequently, this office rendered Atty. Gen. Op. No. 94-122 in regard to the Iberia Parish Fire Protection District No. 1 and again stated the requirement for civil service for firefighters *Page 2 
applies to a "regularly paid fire department", and concluded as follows:
 Based upon an interpretation that any paid full-time firefighters constitutes a regularly paid fire department, it follows by the use of the word "shall" in Art. X, Sec. 16 La.Const., that it is mandatory there be the establishment of a fire and police civil service system by the employment of these four full-time firefighters.
R.S. 33:2543 provides that "each board shall adopt a classification plan for the fire and police service under its jurisdiction." In accordance with the Sec. 21-2 of the Iberia Parish Code, the Fire Protection District No. 1 of Parish of Iberia was created and it "shall have all rights, powers and privileges granted by and conferred by the constitution and statutes of the State of Louisiana", and under Sec. 21-5 the Board of Commissioners is given the power to perform any function necessary for the management of its affairs with the control and management vested in a board of five members.
We must conclude the Board of a Fire Protection District having a "regularly paid fire department" is to establish Civil Service for the full-time paid firefighters.
We hope this sufficiently answers your questions, but if we can be if further assistance, do not hesitate to contact us.
 Sincerely yours,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 BARBARA B. RUTLEDGE
 Assistant Attorney General
 BBR *Page 1 
 ATTACHMENT
OPINION 93-728(A)
April 4, 2008.
Mr. Paul K. Daly State Examiner P.O. Box 44366 Baton Rouge, LA 70804-4366
Dear Mr. Daly:
As State Examiner of the Municipal Fire and Police Civil Service, you have asked this office to reconsider the conclusions of released opinions 93-728 and 93-354.
 ISSUE I
In released opinion 93-728, the author addressed what constitutes a "regularly paid fire department" for purposes of application of a system of classified fire civil service. LSA-Const. Art. X, Section 16 (1974) requires that such a system be created for all municipalities, parishes, and fire protection districts operating a "regularly paid fire department".
There is no jurisprudential or statutory authority defining a "regularly paid fire department". In 93-728, the author concluded that a volunteer fire organization with one paid employee is not sufficient for the establishment of fire civil service.
We reconsider our conclusion in opinion 93-728, having reexamined the holding in the case of Village of Varnado v. Varnado Fire Dept.,563 So.2d 946 (La.App. 1990). In Varnado, supra, the court did not address the issue of whether one regularly paid employee was sufficient to constitute a regularly paid fire department for purposes of eligibility to receive tax proceeds. Rather, the court concluded that there was no regularly paid fire department because there were no regularly paid employees during the time period in question. The case does not stand for the proposition that one regularly paid employee is insufficient to establish a regularly paid fire department for purposes of receipt of tax proceeds, nor for purposes of application of fire civil service. *Page 2 
The doctrine of contemporaneous construction provides that when an administrative body has, over a long period of time, placed an interpretation upon a legislative enactment, that interpretation is entitled to great weight in the determination of the meaning of the legislative enactment. Swetman v. Teachers' Retirement System,578 So.2d 149 (La.App. 1st Cir. 1991). However, when no ambiguity exists in the statute or the construction of the administrative body is clearly erroneous, this doctrine is inapplicable. Swetman, and citations therein.
This office is of the opinion that ambiguity is present because the definition of a "regularly paid fire department" is susceptible to varying interpretations. Further, the doctrine of contemporaneous construction is applicable as you advise your agency has for many years established "several boards which initially had only one or two full time employees". We therefore recall our conclusion in opinion 93-728, and defer to the interpretation of your agency concerning what may constitute a "regularly paid fire department", absent a juriprudential or statutory definition.
 ISSUE II
Regarding released opinion 93-354, this office affirms the conclusions stated therein. The author correctly concluded that a fire protection district operating a regularly paid fire department is required to create a classified fire and police civil service system.
Use of the word "shall" in LSA-Const. Art. X, Section 16 (1974), cited above is mandatory concerning the establishment of a fire and police civil service system to a "fire protection district operating a regularly paid fire department". Further, opinion 93-354 as written is consistent with our reconsideration of 93-728, stated herein.
Please contact this office should you need further assistance.
 Yours very truly,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L. KILPATRTCX
 Assistant Attorney General
 RPI/KLK/93-728(A) *Page 1 
 ATTACHMENT
OPINION NUMBER 93-728
April 4, 2008.
Mr. James M. Bullers District Attorney Twenty-Sixth Judicial District Bossier Parish Courthouse P.O. Box 69 Benton, LA 71006
Dear Mr. Bullers:
This office is in receipt of your request for an opinion of the Attorney General in regard to the South Bossier Volunteer Fire Department. You indicate at this time there are fifty-two volunteers on the Fire Department rolls, and the Board is considering hiring one full-time and possibly one part-time fire fighter/EMT to augment and coordinate the volunteer group. You ask if regularly paid employees are hired, would they fall under Civil Service laws.
Article X, Section 16 of the Louisiana Constitution of 1974 provides as follows:
 A system of classified fire and police civil service is created and established. It shall apply to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to all parishes and fire protection districts operating a regularly paid
fire department. (Emphasis added.)
In Village of Varnado v. Varnado Fire Dept., 563 So. 2d 946 (La.App. 1990), the court was presented with the question whether payment of the tax levied on foreign fire insurers should go to the volunteer fire department or the Village. While the court did not discuss what constitutes a "regularly paid fire department", in reciting the facts of the case the court noted that in 1975 the Varnado Volunteer Fire Department was legally incorporated and in it was not until 1986 that the Volunteer Fire Department first paid an employee regularly. In holding that the funds must go to the Volunteer Fire Department, the court also stated the Village never has had a regularly paid fire department. *Page 2 
Following this statement of the court, we do not find paying one full-time fire fighter to augment and coordinate the volunteer group constitutes operating "a regularly paid fire department". We believe the word "department" has to mean the operation as a whole, and two paid employees with fifty-two volunteers is not a regularly paid fire department.
We recognize that R.S. 33:2535 provides for the creation in the government of a municipality, parish, and in each fire protection district a classified civil service embracing the positions of employment of the fire services. R.S. 33:2541 states the classified service shall comprise every position to which the right of employee selection is vested in the government of the fire protection district, and R.S. 33:2533
defines "department service" as employment in the public service offered and performed by the fire department.
Reading the statutory provisions alone it would appear employment in any fire district would fall into civil service. However, we believe these statutory provisions have to be read in the light of the constitutional mandate for civil service for regularly paid fire departments. Herein we are dealing with employment by the Board of the South Bossier Volunteer Fire Department (Fire District 2), and not a regularly paid fire service. The constitutional provision is relative to civil service for regularly paid fire departments, and the wording of the constitution cannot be ignored. Therefore, we would conclude employment by the government of the fire protection district means, employment in regularly paid fire departments. To conclude to the contrary would mean a civil service system would have to be implemented for only one paid employee.
We find nothing that defines what a "regularly paid fire department" is, and recognize a question can arise as to how many paid employees would be required to remove a group from the category of a volunteer department to that of a regularly paid department so as to fall within the requirements of civil service. We do note in R.S. 40:1567 in regard to fees for fire reports, it provides the term volunteer fire department means a legally constituted fire department or fire protection district of fewer than four persons who are qualified for and receive state supplemental pay under R.S. 33:2001, et seq.
We do not believe it was the intent of the legislature in establishment of fire civil service as directed by the constitution that it extend to a volunteer fire organization with one paid employee. *Page 3 
We hope this sufficiently answers your questions, but if we can be of further assisance, do not hesitate to contact us.
 Sincerely yours,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 BARBARA B.RUTLEDGE
 Assistant Attorney General
 BBR *Page 1 
 ATTACHMENT
OPINION NO. 93-354
June 17 1993.
Mr. W. H. Applegate Secretary-Treasurer Board of Commissioners, Fire Protection District No. 8 111 W. Alabama Street Vivian, LA 71082
Dear Mr. Applegate:
We are in receipt of your request for an Attorney General's Opinion regarding the Caddo Parish Fire Protection District No. 8. In your letter you state that the district can only afford to hire two employees, a fire chief and a dispatch firefighter. You also state that the Caddo Parish Fire Protection District No. 8 has a population of less than nine thousand (9,000). Specifically, you have asked whether the Caddo Parish Fire Protection District No. 8 is required to form a Fire and Police Civil Service system, as provided by Article X of the Louisiana Constitution of 1974?
LSA-Const. Art. X, Section 16 provides for the establishment of a classified fire and police civil service system which is applicable "to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to allparishes and fire protection districts operating a regularly paid firedepartment." (Emphasis added.) LSA-R.S. 33:2531 et seq. provides for the fire and police civil service law for small municipalities and for parishes and fire protection districts. LSA-R.S. 33:2531 specifically states, in pertinent part:
 § 2531. Mandatory civil service in certain municipalities, parishes, and districts
 Permanent appointments and promotions for paid firemen and policemen in the classified civil service as enumerated herein in all municipalities having a population of not less than seven thousand and not more than thirteen thousand,. . . and in all parishes and fire protection districts, shall be made only after certification pursuant to a general system based upon merit, efficiency and fitness, under which certificates shall be based on examinations which, so far as practical, shall be competitive, and all employees in the classified service shall be employed from those eligible under certification. (Emphasis added.) *Page 2 
Section 2535 provides for a classified civil service system to be created in each municipal government, parish government, and in the government of each fire protection district. Likewise, a fire and police civil service board is created for each governing body in Section 2536 of Title 33 of the Louisiana Revised Statutes. The Louisiana Supreme Court in West v. Allen, 382 So.2d 924 (La. 1980), found that the Constitution (Art. 10, §§ 16-20) clearly establishes a system of classified fire and police civil service in all towns of a certain size and in all parishes and fire protection districts operating a regularly paid fire department. There is no size requirement for the creation of a classified civil service system in a parish and fire protection district, therefore, it is irrelevant that the Caddo Parish Fire Protection District No. 8 has a population of less than nine thousand. The only requirement by law is that the parish and fire protection districts operate a regularly paid fire department. Therefore, it is our opinion that the Caddo Parish Fire Protection District No. 8 is required to create a classified fire and police civil service system. By this opinion, we hereby repeal Atty. Gen. Opinion No. 86-27, which is in conflict with this opinion.
If we can be of further assistance in this matter, please advise.
 Sincerely,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 Angie Rogers LaPlace
 Assistant Attorney General
 ARL/lg *Page 1 
 ATTACHMENT
OPINION NUMBER 94-122
April 4, 2008.
J. Wayne Landry, Esq. Assistant District Attorney Sixteenth Judicial District Courthouse Bldg., Suite 200 New Iberia, LA 70560-4583
Dear Mr. Landry:
This office is in receipt of your request for an opinion of the Attorney General in regard to the applicability of civil service to the Iberia Parish Fire Protection District No. 1. You indicate the Fire Protection District currently employs four full-time employees, being a coordinator and three full-time firefighters. The Fire Department is additionally staffed by a large number of volunteer firefighters.
Your questions are as follows:
 1. Do civil service requirements apply to the paid fireman and coordinator for the Iberia Parish Fire Protection District No. 1 and is it necessary that the Parish establish a civil service board to oversee these employees; and
 2. What constitutes a "regularly paid fire department" as stipulated in the law which creates and establishes classified fire and police civil service.
Article X, Section 16, La.Const. 1974, provides as follows:
 A system of classified fire and police civil service is created and established. It shall apply to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to all parishes and fire protection districts operating a regularly paid fire department;. (Emphasis added.)
The requirement for civil service for firefighters applies to a "regularly paid fire department", and in your second question you ask what constitutes a regularly paid fire department. *Page 2 
In Atty. Gen. Op. No. 93-728(A) this office observed there is no jurisprudential or statutory authority defining a "regularly paid fire department", and found an ambiguity exists since the term is susceptible to varying interpretations. Therefore, it-was concluded the doctrine of contemporaneous construction was applicable which provides when an administrative body has, over a long period of time, placed an interpretation upon a legislative enactment, that interpretation is entitled to great weight in determining the meaning of the legislative enactment.
You indicate that the administration for civil service for firemen and policemen has interpreted the provision relative to what constitutes a regular paid fire department to mean that any person in classified service who is compensated for his services constitutes a paid fire department, and this is the interpretation we must accept.
You recognize the answer to your first question would hinge upon whether or not the Iberia Parish Fire Protection District No. 1 operates a regularly paid fire department. Based upon an interpretation that any paid full-time firefighters constitutes a regularly paid fire department, it follows by the use of the word "shall" in Art. X, Sec. 16. La.Const., that it is mandatory there be the establishment of a fire and police civil service system by the employment of these four full-time firefighters.
We hope this sufficiently answers your question, but if we can be of further assistance, do not hesitate to contact us.
 Sincerely yours,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 BARBARA B. RUTLEDGE
 Assistant Attorney General
 BBR *Page 1 
 ATTACHMENT
OPINION 99-41
June 22, 1999.
Mr. James E. Durbin Livingston Parish Fire District 112 Hummell Avenue P.O. Box 608 Denham Springs, LA 70727-0608
Dear Mr. Durbin:
You have asked this office to determine whether a fireman employed on a part-time basis by the Board of Commissioners is legally required to be placed in the civil service system.
LSA-Const. Art. X, Section 16 (1974) provides for the establishment of a classified fire and police civil service system which is applicable "to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to all parishes and fire protection districts operating a regularly paid fire department."
You advise that the threshold requirement of LSA-Const. Art. X, Section 16 (1974) is met i.e., that the Fire Protection District No. 4 of Livingston Parish does operate a "regularly paid fire department" and that a civil service system has been established in which is enrolled five full-time dispatchers and one full-time secretary. You ask whether part-time firemen who are proposed to be hired by the governing board of the district should be considered as classified civil service employees.
Our answer is in the affirmative, if the position is allocated as a primary responsibility or duty one of those duties described in R.S.33:2541 (A) (1-9), providing:
 2541. Classified and unclassified service
 A. The classified service shall comprise every position, except those included in the unclassified service, to which the right of employee selection, appointment, supervision, and discharge is vested in the government of the municipality, parish or fire protection district as the case may be, under which the fire or police service functions, or in an officer or employee thereof, and which has as its primary duty and responsibility one of the following: *Page 2 
 (Fire)
 1. The chief and assistant chiefs; the intradepartmental division, bureau, squad, platoon and company officers of the fire and police department.
 2. Fire fighting and police.
 3. Fire prevention; inspection.
 4. Driving, tillering and operation of fire apparatus.
 5. Operation and maintenance of radio, fire alarm or signal system.
 6. Fire and policy department instructors in employee training.
 7. Fire salvage and overhauling services, and first aid.
 8. Automotive or fire and police apparatus repairs, if such service is operated exclusively by and for the fire and police department.
 9. Secretary to the chief and departmental records clerk.
In accord is Attorney General Opinion 98-267, a copy of which is attached for your review.
We assume from your correspondence that Heintz vs. City of Gretna,683 So.2d 926 (La.App. 5th Cir. 1996), writ den. 683 So.2d 926 (La. 1997) is inapplicable to your inquiry.[1] We also forward to you Attorney General Opinions 95-37, 94-441 and 93-728(A), along with Opinion 98-267, for your further review.
 Should you have any further questions, please contact this office.
 Very truly yours,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L. KILAPATRICK
 ASSISTANT ATTORNEY GENERAL
 KLK:ams *Page 1 
 ATTACHMENT
Opinion 99-41
April 4, 2008.
R.S. 33:2541(A)(1-9)
Part-time firefighter must be placed in firefighter civil service system if he holds a position which has as a primary duty or responsibility one of those duties statutorily provided by R.S.33:2541A(1-9).
Mr. James E. Durbin Livingston Parish Fire District 112 Hummell Avenue P.O. Box 608 Denham Springs, LA 70727-0608
 KERRY L. KILPATRICK
 ASSISTANT ATTORNEY GENERAL *Page 1 
 ATTACHMENT
OPINION NUMBER 95-37
April 4, 2008.
Thomas O. Wells, Esq. Assistant District Attorney Ninth Judicial District P.O. Drawer 1472 Alexandria, LA 71309
Dear Mr. Wells:
This office is in receipt of your request for an opinion of the Attorney General on behalf of the Rapides Parish Police Jury in regard to firefighters in the Rapides Parish Fire Protection District #3. You indicate there are three full-time firefigthers in the Protection District and the Rapides Parish Police Jury asks if this constitutes a "regularly paid fire department" as used in Art. X, Sec. 16 of the Constitution so as to require that the firefighters be classified civil service employees.
As you recognize this office has previously rendered Attorney General Opinions relative to this subject for you state you have advised the Police Jury of Atty. Gen. Op. Nos. 94-122, 93-728 and 93-728(A). This office in the more recent opinion Atty. Gen. Op. No. 94-441 reaffirmed Atty. Gen. Op. No. 93-728 and 782(A) which had concluded by the use of the word "shall" in Art. X, Sec. 16 of the Constitution of 1974, a fire and police civil service system is mandatory for a "fire protection district operating a regularly paid fire department", and followed the interpretation of the State Examiner that where there is only one or two full-time firefighters there is a requirement for civil service. This was in accord with the conclusions of this office in Atty. Gen. Op. No. 93-354 that "a fire protection district operating a regularly paid fire department is required to created a classified fire and police civil service system."
In Atty. Gen. Op. No. 94-441 the question was presented whether the Iberia Parish Council or the Fire Protection District No. 1 had the authority to establish a civil service system for the employees of the fire district. This office relied upon R.S. 33:2543 which provides that "each board shall adopt a classification plan for the fire and police service under its jurisdiction" and found the Board of the Fire Protection District having a "regularly paid fire department" is to establish Civil Service for the full-time paid firefighters. *Page 2 
We hope this sufficiently answers your question, but if we can be of further assistance, do not hesitate to contact us.
 Sincerely yours,
 RICHARD P. IEYOUB
 Attorney General
 BARBARA B. RUTLEDGE
 Assistant Attorney General
 BBR *Page 1 
 ATTACHMENT
OPINION NUMBER 94-441
April 4, 2008.
Ms. Diane B. Phillips Clerk of Council Iberia Parish Council Courthouse Bldg., Suite 410 300 Iberia Street New Iberia, LA 70560-4543
Dear Ms. Phillips:
This office is in receipt of your request for an opinion of the Attorney General in regard to establishment of a civil service system for the employees of Fire Protection District No. 1. You indicate the Iberia Parish Fire Protection District No. 1 Board is currently in the process of proceeding with the establishment of a civil service system and board for its employees, and the Iberia Parish Council has adopted a resolution in opposition to the creation of this system. Since there is a jurisdictional question, you ask whether the Iberia Parish Council or the Fire Protection District No. 1 has the authority to establish a civil service system for the employees of said fire district.
In Atty. Gen. Opinion No. 93-728(A) this office reconsidered Atty. Gen. Op. No. 93-728 and concluded by the use of the word "shall" in Art. X, Sec. 16 of the Constitution of 1974, a fire and police civil service system is mandatory for a "fire protection district operating a regularly paid fire department". It was further observed for the definition of a "regularly paid fire department" the conclusion of 93-728 was recalled which did not find paying one full-time fire fighter to augment and coordinate volunteers constituted operating "a regularly paid fire department". Instead, under the doctrine of contemporaneous construction, this office deferred to the interpretation of the State Examiner as to the requirement for civil service for a regularly paid fire department to include where there is only one or two full time employees. Atty. Gen. Op. No. 93-354 was affirmed that held "a fire protection district operating a regularly paid fire department is required to create a classified fire and police civil service system."
Subsequently, this office rendered Atty. Gen. Op. No. 94-122 in regard to the Iberia Parish Fire Protection District No. 1 and again stated the requirement for civil service for firefighters *Page 2 
applies to a "regularly paid fire department", and concluded as follows:
 Based upon an interpretation that any paid full-time firefighters constitutes a regularly paid fire department, it follows by the use of the word "shall" in Art. X, Sec. 16 La.Const., that it is mandatory there be the establishment of a fire and police civil service system by the employment of these four full-time firefighters.
R.S. 33:2543 provides that "each board shall adopt a classification plan for the fire and police service under its jurisdiction." In accordance with the Sec. 21-2 of the Iberia Parish Code, the Fire Protection District No. 1 of Parish of Iberia was created and it "shall have all rights, powers and privileges granted by and conferred by the constitution and statutes of the State of Louisiana", and under Sec. 21-5 the Board of Commissioners is given the power to perform any function necessary for the management of its affairs with the control and management vested in a board of five members.
We must conclude the Board of a Fire Protection District having a "regularly paid fire department" is to establish Civil Service for the full-time paid firefighters.
We hope this sufficiently answers your questions, but if we can be if further assistance, do not hesitate to contact us.
 Sincerely yours,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 BARBARA B. RUTLEDGE
 Assistant Attorney General
 BBR *Page 1 
 ATTACHMENT
OPINION 93-728(A)
April 4, 2008.
Mr. Paul K. Daly State Examiner P.O. Box 44366 Baton Rouge, LA 70804-4366
Dear Mr. Daly:
As State Examiner of the Municipal Fire and Police Civil Service, you have asked this office to reconsider the conclusions of released opinions 93-728 and 93-354.
 ISSUE I
In released opinion 93-728, the author addressed what constitutes a "regularly paid fire department" for purposes of application of a system of classified fire civil service. LSA-Const. Art. X, Section 16 (1974) requires that such a system be created for all municipalities, parishes, and fire protection districts operating a "regularly paid fire department".
There is no jurisprudential or statutory authority defining a "regularly paid fire department". In 93-728, the author concluded that a volunteer fire organization with one paid employee is not sufficient for the establishment of fire civil service.
We reconsider our conclusion in opinion 93-728, having reexamined the holding in the case of Village of Varnado v. Varnado Fire Dept.,563 So.2d 946 (La.App. 1990). In Varnado, supra, the court did not address the issue of whether one regularly paid employee was sufficient to constitute a regularly paid fire department for purposes of eligibility to receive tax proceeds. Rather, the court concluded that there was no regularly paid fire department because there were no regularly paid employees during the time period in question. The case does not stand for the proposition that one regularly paid employee is insufficient to establish a regularly paid fire department for purposes of receipt of tax proceeds, nor for purposes of application of fire civil service. *Page 2 
Following this statement of the court, we do not find paying one full-time fire fighter to augment and coordinate the volunteer group constitutes operating "a regularly paid fire department".
We believe the word "department" has to mean the operation as a whole, and two paid employees with fifty-two volunteers is not a regularly paid fire department.
We recognize that R.S. 33:2535 provides for the creation in the government of a municipality, parish, and in each fire protection district a classified civil service embracing the positions of employment of the fire services. R.S. 33:2541 states the classified service shall comprise every position to which the right of employee selection is vested in the government of the fire protection district, and R.S. 33:2533
defines "department service" as employment in the public service offered and performed by the fire department.
Reading the statutory provisions alone it would appear employment in any fire district would fall into civil service. However, we believe these statutory provisions have to be read in the light of the constitutional mandate for civil service for regularly paid fire departments. Herein we are dealing with employment by the Board of the South Bossier Volunteer Fire Department (Fire District 2), and not a regularly paid fire service. The constitutional provision is relative to civil service for regularly paid fire departments, and the wording of the constitution cannot be ignored. Therefore, we would conclude employment by the government of the fire protection district means, employment in regularly paid fire departments. To conclude to the contrary would mean a civil service system would have to be implemented for only one paid employee.
We find nothing that defines what a "regularly paid fire department" is, and recognize a question can arise as to how many paid employees would be required to remove a group from the category of a volunteer department to that of a regularly paid department so as to fall within the requirements of civil service. We do note in R.S. 40:1567 in regard to fees for fire reports, it provides the term volunteer fire department means a legally constituted fire department or fire protection district of fewer than four persons who are qualified for and receive state supplemental pay under R.S. 33:2001, et seq.
We do not believe it was the intent of the legislature in establishment of fire civil service as directed by the constitution that it extend to a volunteer fire organization with one paid employee. *Page 1 
 ATTACHMENT
OPINION NUMBER 98-267
April 4, 2008.
Mr. Kevin Conner Council Attorney Plaquemines Parish Government P.O. Box 538 Belle Chasse, LA 70037
Dear Mr. Conner:
This office is in receipt of your recent opinion request in regard to firefighters and civil service. Specifically, you ask the following three questions:
 1. Does a single full-time firefighter have to be placed in the Civil Service System?
 2. Does a part-time paid firefighter have to be placed in the Civil Service System?
 3. Assuming that either question one or two is answered in the affirmative, can the Plaquemines Parish Government utilize its own Civil Service System and place the firefighter in a separate category underneath that system, or must an entirely new civil service system dedicated to firemen be established?
As you recognize, this office has previously rendered opinions regarding this matter. Most recently, Atty. Gen. Op. No. 95-37, which cited Atty. Gen. Op. Nos. 94-441, 93728, and 93-728(A), concluded that a "regularly paid fire department" must be placed in the civil service system as required by Art. X, Sec. 16 of the Louisiana Constitution of 1974. These previous opinions, following the interpretation of the State Examiner, say that one full-time firefighter meets the requirement of a "regularly paid fire department" and therefore requires a civil service system.
In reviewing LSA-R.S. 33:2533, which defines terms used when referring to the fire and police civil service law, we find that there is no definition for part-time paid firefighters. LSA-R.S. 33:2531 mandates that any permanent appointment for a paid firefighter shall *Page 2 
make a distinction between full-time and part-time firefighters. It simply refers to any permanent appointment. Therefore, it is our opinion that under this statute, a part-time paid firefighter should be placed in a civil service system as long as his appointment is permanent and he meets the test set out in LSA-R.S. 33:2541. This statute must be considered when determining whether an employee is classified or unclassified. In order to be classified, the employee must have as a primary duty one of the duties listed in LSA-R.S. 33:2541 A(1-9). Therefore, if a part-time firefighter does not have one of the listed duties as his or her primary duty, then he or she should be unclassified.
In regard to your third question, LSA-R.S. 33:2535 and 33:2536 mandate the creation of "The Fire and Police Civil Service" and the fire and police civil service board, respectively. LSA-R.S. 33:2535 creates a classified civil service system in each parish government. LSA-R.S. 33:2536
sets out the requirements for creating a fire and police service board. It is our opinion that Plaquemines Parish must create a civil service system for firefighters separate and apart from the government civil service system if it is operating a regularly paid fire department. This is consistent with Atty. Gen. Op. Nos. 93-728(A) and 93-354.
In conclusion, it is the opinion of this office that (1) a single full-time firefighter must be placed in the civil service system; (2) a part-time paid firefighter should not be placed in a civil service system if he or she does not meet the "primary duty" test; and (3) Plaquemines Parish must create a separate civil service system for firefighters as long as it is operating a regularly paid fire department.
We hope this sufficiently answers your questions, but if we can be of further assistance, do not hesitate to contact us.
 Yours very truly,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 ROBERT B. BARBOR
 Assistant Attorney General
 RPI:RBB:glb *Page 1 
 ATTACHMENT
OPINION 01-379
January 3, 2002.
Mr. Richard W. Watts Attorney at Law 914 Pearl Street Franklinton, Louisiana 70438
Dear Mr. Watts:
You advise this office that the Washington Parish Fire Protection District #7 (hereafter District 7) has hired five full time paid firemen. Arising out of this occurrence are the following two questions:
 1. Is a rural fire protection district with five full time paid firemen required to establish a civil service system for its employees pursuant to R.S. 33:2531, et seq.?
 2. Do the terms and conditions of employment mandated by R.S. 33:1991, et seq. apply to a rural fire protection district which employs five paid fireman?
We answer your first question in the affirmative. Article X Sec 16 of the Louisiana Constitution (1974) provides for the establishment of a classified fire and police civil service system which is applicable "to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to all parishes and fire protection districts operating a regularly paidfire department." (Emphasis added).
The constitution mandates that a system of classified fire civil service be created for fire protection districts operating a "regularly paid fire department". This office has determined that one full time employee constitutes a regularly paid fire department. See attached Attorney General Opinions 93-728(A); 95-37; and 98-267.
Further, R.S. 33:2531, et seq., which provides the fire civil service law for fire protection districts, contains no size requirement for the creation of a classified civil service system in a fire protection district. The only requirement is that the fire protection district operate a regularly paid fire department, as District #7 does, by virtue of its employ of five full time firemen. See Attorney General Opinion 93-354, copy attached. *Page 2 
Our response to our second question is also in the affirmative. LSA-R.S. 33:1991 states in pertinent part:
A. The word "firemen," as used in this Sub-part includes all personsemployed or engaged full time by municipalities or municipal fire departments or by parishes or parish fire departments or fire protectiondistricts for fire fighting or fire prevention duties and services, including operators of the fire-alarm system when such operators are members of the regularly constituted fire department. The word "firemen" does not include carpenters, storekeepers, machinists, clerks, building hazard and similar inspectors, physicians or other non-fire fighting employees detailed for such special duties, nor does the word "firemen," include employees of privately owned or operated fire fighting or fire prevention services. (Emphasis added).
Thus, the statutory provisions for minimum wages are applicable to "fire protection district paid firemen"; (see R.S. 33:1992); note also that those provisions pertaining to sick leave and annual vacation are applicable to firemen employed by a fire protection district (see R.S.33:1995 and R.S. 33:1996), and that R.S. 33:1999 is applicable as it pertains to work on holidays.
Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L. KILAPATRICK
 ASSISTANT ATTORNEY GENERAL
 KLK:ams *Page 1 
 ATTACHMENT
OPINION 93-728 (A)
April 4, 2008.
Mr. Paul K. Daly State Examiner P.O. Box 44366 Baton Rouge, LA 70804-4366
Dear Mr. Daly:
As State Examiner of the Municipal Fire and Police Civil Service, you have asked this office to reconsider the conclusions of released opinions 93-728 and 93-354.
 ISSUE I
In released opinion 93-728, the author addressed what constitutes a "regularly paid fire department" for purposes of application of a system of classified fire civil service. LSA-Const. Art. X, Section 16 (1974) requires that such a system be created for all municipalities, parishes, and fire protection districts operating a "regularly paid fire department".
There is no jurisprudential or statutory authority defining a "regularly paid fire department". In 93-728, the author concluded that a volunteer fire organization with one paid employee is not sufficient for the establishment of fire civil service.
We reconsider our conclusion in opinion 93-728, having reexamined the holding in the case of Village of Varnado v. Varnado Fire Dept.,563 So.2d 946 (La.App. 1990). In Varnado. supra, the court did not address the issue of whether one regularly paid employee was sufficient to constitute a regularly paid fire department for purposes of eligibility to receive tax proceeds. Rather, the court concluded that there was no regularly paid fire department because there were no regularly paid employees during the time period in question. The case does not stand for the proposition that one regularly paid employee is insufficient to establish a regularly paid fire department for purposes of receipt of tax proceeds, nor for purposes of application of fire civil service. *Page 2 
The doctrine of contemporaneous construction provides that when an administrative body has, over a long period of time, placed an interpretation upon a legislative enactment, that interpretation is entitled to great weight in the determination of the meaning of the legislative enactment. Swetman v. Teachers' Retirement System,578 So.2d 149 (La.App. 1st Cir. 1991). However, when no ambiguity exists in the statute or the construction of the administrative body is clearly erroneous, this doctrine is inapplicable. Swetman, and citations therein.
This office is of the opinion that ambiguity is present because the definition of a "regularly paid fire department" is susceptible to varying interpretations. Further, the doctrine of contemporaneous construction is applicable as you advise your agency has for many years established "several boards which initially had only one or two full time employees". We therefore recall our conclusion in opinion 93-728, and defer to the interpretation of your agency concerning what may constitute a "regularly paid fire department", absent a juriprudential or statutory definition.
 ISSUE II
Regarding released opinion 93-354, this office affirms the conclusions stated therein. The author correctly concluded that a fire protection district operating a regularly paid fire department is required to create a classified fire and police civil service system.
Use of the word "shall" in LSA-Const. Art. X, Section 16 (1974), cited above is mandatory concerning the establishment of a fire and police civil service system to a "fire protection district operating a regularly paid fire department". Further, opinion 93-354 as written is consistent with our reconsideration of 93-728, stated herein.
Please contact this office should you need further assistance.
 Yours very truly,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L. KILPATRICK
 Assistant Attorney General
 RPI/KLK/93-728(A) *Page 1 
 ATTACHMENT
OPINION NO. 93-354
April 4, 2008.
Mr. W. H. Applegate Secretary-Treasurer Board of Commissioners, Fire Protection District No. 8 111 W. Alabama Street Vivian, LA 71082
Dear Mr. Applegate:
We are in receipt of your request for an Attorney General's Opinion regarding the Caddo Parish Fire Protection District No. 8. In your letter you state that the district can only afford to hire two employees, a fire chief and a dispatch firefighter. You also state that the Caddo Parish Fire Protection District No. 8 has a population of less than nine thousand (9,000). Specifically, you have asked whether the Caddo Parish Fire Protection District No. 8 is required to form a Fire and Police Civil Service system, as provided by Article X of the Louisiana Constitution of 1974?
LSA-Const. Art. X, Section 16 provides for the establishment of a classified fire and police civil service system which is applicable "to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to allparishes and fire protection districts operating a regularly paid firedepartment." (Emphasis added.) LSA-R.S. 33:2531 et seq. provides for the fire and police civil service law for small municipalities and for parishes and fire protection districts. LSA-R.S. 33:2531 specifically states, in pertinent part:
 § 2531. Mandatory civil service in certain municipalities, parishes, and districts
 Permanent appointments and promotions for paid firemen and policemen in the classified civil service as enumerated herein in all municipalities having a population of not less than seven thousand and not more than thirteen thousand,. . . and in all parishes and fire protection districts, shall be made only after certification pursuant to a general system based upon merit, efficiency and fitness, under which certificates shall be based on examinations which, so far as practical, shall be competitive, and all employees in the classified service shall be employed from those eligible under certification. (Emphasis added.) *Page 2 
Section 2535 provides for a classified civil service system to be created in each municipal government, parish government, and in the government of each fire protection district. Likewise, a fire and police civil service board is created for each governing body in Section 2536 of Title 33 of the Louisiana Revised Statutes. The Louisiana Supreme Court in West v. Allen, 382 So.2d 924 (La. 1980), found that the Constitution (Art. 10, §§ 16-20) clearly establishes a system of classified fire and police civil service in all towns of a certain size and in all parishes and fire protection districts operating a regularly paid fire department. There is no size requirement for the creation of a classified civil service system in a parish and fire protection district, therefore, it is irrelevant that the Caddo Parish Fire Protection District No. 8 has a population of less than nine thousand. The only requirement by law is that the parish and fire protection districts operate a regularly paid fire department. Therefore, it is our opinion that the Caddo Parish Fire Protection District No. 8 is required to create a classified fire and police civil service system. By this opinion, we hereby repeal Atty. Gen. Opinion No. 86-27, which is in conflict with this opinion.
If we can be of further assistance in this matter, please advise.
 Sincerely,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 Angie (Rogers LaPlace
 Assistant Attorney General
 ARL/lg *Page 1 
 ATTACHMENT
OPINION NUMBER 95-37
April 4, 2008.
Thomas O. Wells, Esq.
Assistant District Attorney
Ninth Judicial District
P.O. Drawer 1472
Alexandria, LA 71309
Dear Mr. Wells:
This office is in receipt of your request for an opinion of the Attorney General on behalf of the Rapides Parish Police Jury in regard to firefighters in the Rapides Parish Fire Protection District #3. You indicate there are three full-time firefigthers in the Protection District and the Rapides Parish Police Jury asks if this constitutes a "regularly paid fire department" as used in Art. X, Sec. 16 of the Constitution so as to require that the firefighters be classified civil service employees.
As you recognize this office has previously rendered Attorney General Opinions relative to this subject for you state you have advised the Police Jury of Atty. Gen. Op. Nos. 94-122, 93-728 and 93-728(A). This office in the more recent opinion Atty. Gen. Op. No. 94-441 reaffirmed Atty. Gen. Op. No. 93-728 and 782(A) which had concluded by the use of the word "shall" in Art. X, Sec. 16 of the Constitution of 1974, a fire and police civil service system is mandatory for a "fire protection district operating a regularly paid fire department", and followed the interpretation of the State Examiner that where there is only one or two full-time firefighters there is a requirement for civil service. This was in accord with the conclusions of this office in Atty. Gen. Op. No. 93-354 that "a fire protection district operating a regularly paid fire department is required to created a classified fire and police civil service system."
In Atty. Gen. Op. No. 94-441 the question was presented whether the Iberia Parish Council or the Fire Protection District No. 1 had the authority to establish a civil service system for the employees of the fire district. This office relied upon R.S. 33:2543 which provides that "each board shall adopt a classification plan for the fire and police service under its jurisdiction" and found the Board of the Fire Protection District having a "regularly paid fire department "is to establish Civil Service for the full-time paid firefighters. *Page 2 
We hope this sufficiently answers your question, but if we can be of further assistance, do not hesitate to contact us.
 Sincerely yours,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 BARBARA B. RUTLEDGE
 Assistant Attorney General
 BBR *Page 1 
 ATTACHMENT
OPINION NUMBER 98-267
April 4, 2008.
Mr. Kevin Conner Council Attorney Plaquemines Parish Government P.O. Box 538 Belle Chasse, LA 70037
Dear Mr. Conner:
This office is in receipt of your recent opinion request in regard to firefighters and civil service. Specifically, you ask the following three questions:
 1. Does a single full-time firefighter have to be placed in the Civil Service System?
 2. Does a part-time paid firefighter have to be placed in the Civil Service System?
 3. Assuming that either question one or two is answered in the affirmative, can the Plaquemines Parish Government utilize its own Civil Service System and place the firefighter in a separate category underneath that system, or must an entirely new civil service system dedicated to firemen be established?
As you recognize, this office has previously rendered opinions regarding this matter. Most recently, Atty. Gen. Op. No. 95-37, which cited Atty. Gen. Op. Nos. 94-441, 93-728, and 93-728(A), concluded that a "regularly paid fire department" must be placed in the civil service system as required by Art. X, Sec. 16 of the Louisiana Constitution of 1974. These previous opinions, following the interpretation of the State Examiner, say that one full-time firefighter meets the requirement of a "regularly paid fire department" and therefore requires a civil service system.
In reviewing LSA-R.S. 33:2533, which defines terms used when referring to the fire and police civil service law, we find that there is no definition for part-time paid firefighters. LSA-R.S. 33:2531 mandates that any permanent appointment for a paid firefighter shall occur only after certification pursuant to the general system. This statute does not *Page 2 
make a distinction between full-time and part-time firefighters. It simply refers to any permanent appointment. Therefore, it is our opinion that under this statute, a part-time paid firefighter should be placed in a civil service system as long as his appointment is permanent and he meets the test set out in LSA-R.S. 33:2541. This statute must be considered when determining whether an employee is classified or unclassified. In order to be classified, the employee must have as a primary duty one of the duties listed in LSA-R.S. 33:2541 A(1-9). Therefore, if a part-time firefighter does not have one of the listed duties as his or her primary duty, then he or she should be unclassified.
In regard to your third question, LSA-R.S. 33:2535 and 33:2536 mandatethe creation of "The Fire and Police Civil Service" and the fire and police civil service board, respectively. LSA-R.S. 33:2535 creates a classified civil service system in each parish government. LSA-R.S. 33:2536
sets out the requirements for creating a fire and police service board. It is our opinion that Plaquemines Parish must create a civil service system for firefighters separate and apart from the government civil service system if it is operating a regularly paid fire department. This is consistent with Atty. Gen. Op. Nos. 93-728(A) and 93-354.
In conclusion, it is the opinion of this office that (1) a single full-time firefighter must be placed in the civil service system; (2) a part-time paid firefighter should not be placed in a civil service system if he or she does not meet the "primary duty" test; and (3) Plaquemines Parish must create a separate civil service system for firefighters as long as it is operating a regularly paid fire department.
We hope this sufficiently answers your questions, but if we can be of further assistance, do not hesitate to contact us.
 Yours very truly,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY:__________________________
 ROBERT B. BARBOR
 Assistant Attorney General
 RPI:RBB:glb *Page 1 
 ATTACHMENT
OPINION NUMBER 06-0171
April 4, 2008.
Martin S Trirhe President Assumption Parish Police Jury 4813 HIghway 1 P.O. Box 520 Napoleonville Louisiana 70390
Dear Mr. Triche:
On behalf of the Assumption Parish Police Jury ("Police Jury"), you have requested an opinion of this office regarding the legal status of Fire Departments located within Assumption Parish. According to your request, the Police Jury currently serves as the Fire Board of Assumption Parish and contracts with individual Fire Departments to provide fire protection. Funding for the Fire Departments comes from a tax millage that is distributed by the Police Jury to each Fire Department pursuant to a written contract to provide fire protection within a designated fire protection district.
Enclosed with your request is a copy of a sample contract between Fire Protection District No. 1, for the Parish of Assumption, through the Assumption Parish Police Jury as the governing authority, and a local Volunteer Fire Department.
Specifically, you ask whether the individual Fire Departments that contract with the Police Jury are considered political subdivisions of the State or whether they are considered public bodies at all. You also ask how the legal designation of the Fire Departments relates to compliance with the State public bid law, open meeting law, publication of minutes and budgets, etc. Finally, you ask whether the Police Jury can handle administrative functions of the Fire Departments, such as bill paying, from the individual millage funds allocated to each Fire Department, if such payment is included in the contract between the Police Jury and the Fire Department.
La.R.S. 40:1492 authorizes a parish governing authority to create or enlarge fire protection districts and provides that fire protection districts so created are "subdivisions of the state within the laws of this state relating to the voting and levying of special maintenance taxes, incurring debt, and issuing bonds therefore. . . ." For all other *Page 2 
purposes and pursuant to La.R.S. 40:1500, fire protection districts shall constitute public corporations and may enter into such contracts as they consider necessary or desirable to carry out the purposes for which they were created. La.R.S. 40:1496.15 provides that "the governing authority of the parish of Assumption shall be the governing authority of each fire protection district within the parish and shall have all powers and duties provided by law for governing authorities of fire protection districts."
Finally, La.R.S. 33: 2101 authorizes a parish or fire district to contract with a volunteer fire department to provide fire protection within the fire protection district created or governed by the parish pursuant to R.S. 40:1492.
As noted above, La.R.S. 33:2101 authorizes the Assumption Parish Police Jury, acting as governing authority of each fire protection district within the parish, to enter into contracts with private entities, such as a Volunteer Fire Department, to provide for fire protection services within statutorily created fire protection districts.
Prior opinions of our office have opined that a volunteer fire department is a quasi-public body if it is primarily funded with public funds, serves a public purpose and renders a public service. See Atty. Gen. Op. Nos. 02-36, 91-162, 90-271, and 84-583. Quasi-public bodies are those bodies which are not strictly private bodies. See Attorney General Opinion No. 78-1183.
In Atty. Gen. Ops. 84-583 and 93-595, this office opined that all quasi-public bodies are required to conduct and file audits pursuant to La.R.S. 24:511, et seq. In Atty. Gen. Op. 02-36, this office opined that the governing authority of a fire district has the right to seek a complete review and audit of the financial records of a volunteer fire department, obtain possession to the records of the volunteer fire department and its equipment, and take control of the bank account if the volunteer fire department is primarily funded by public funds.
As stated above, a volunteer fire department that is primarily funded with public funds, and which serves a public purpose and renders a public service is classified as a quasi-public body and would thus be subject to the audit and oversight authorities of the Legislative Auditor under La.R.S. 24:511 et seq., and subject to a complete review, control and possession of its financial records by the fire protection district or governing authority. In addition, La.R.S. 44:1A(1) specifically states that the Public Record Law (La.R.S. 44:1 et seq.) applies to all public bodies, including "a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function." Accordingly, a quasi-public nonprofit volunteer fire department is also subject to the Public Records Law. *Page 3 
However, a volunteer fire department, even if a quasi-public body, is not a public entity within the meaning of Public Bid Law (La.R.S.38:2211A (10)), or a public body within the meaning of Open Meeting Law (La.R.S. 42:4.2A (2)) and therefore is not subject to the Public Bid Law (La.R.S. 38:2211-2293) or Open Meeting Law (La.R.S. 42:4.1-13). Furthermore, the Local Government Budget Act (La.R.S. 39:1301-1315) applies to all political subdivisions, including municipalities, of the state with a general fund or a special revenue fund. A volunteer fire department is not considered a political subdivision and thus is not required to comply with the Budget Act.
Accordingly, it is the opinion of this office that a volunteer fire department governed by the Assumption Parish Police Jury and which is primarily funded with public funds, which serves a public purpose and which renders a public service, is a quasi-public entity and is subject to the Louisiana Public Records Law and subject to the audit and oversight authorities of the Legislative Auditor under La.R.S. 24:511 et seq., and subject to a complete review, control and possession of its financial records by the fire protection district or governing authority, but not subject to the Public Bid Law, Open Meeting Law or Local Governmental Budget Act.
It is the further opinion of this office that, pursuant to the authority provided in La.R.S. 40:1492 et seq., and La.R.S. 33:2101, the Assumption Police Jury, acting as the governing authority for the parish fire protection district, may enter into a contract with a Fire Department to handle certain administrative functions of the Fire Department and receive payment for such services from the individual millage funds allocated to each Fire Department.
We trust this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
With kindest regards,
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY:__________________________
 RICHARD L. MCGIMSEY
 Assistant Attorney General
 CCF/RLM/jav *Page 1 
 ATTACHMENT
OPINION 02-36
Mar 14 2002.
Mayor Charles A. Bracey Town of Roseland P.O. Box 302 Roseland, LA 70456
Dear Mayor Bracey:
This office is in receipt of your request for an opinion of the Attorney General in regard to the Volunteer Fire Department of the Town of Roseland. You indicate there are no paid or full time fire fighters in the Town, and the department is funded by tax revenues and supplemented by amounts raised through volunteer fire department fund raisers. The members of the department have incorporated themselves into a non-profit corporation for purposes of raising funds. A disagreement arose between the leadership of the volunteer fire department and the town municipal government concerning the priority of tax dollar expenditures and the authority of the municipal government to direct the affairs of the volunteer department. The Fire Chief was terminated by the Board of Aldermen. The former fire chief and those volunteers who supported him have used the non-profit corporation to take control of and maintain possession of certain fire department records, equipment and monies raised in connection with the volunteer fire department However, you further state that the volunteer fire department through its non-profit corporation, in addition to having raised funds, received tax dollars from the general fund of the Town and the Tangipahoa Parish Rural Fire Protection District No. Two. and from State Fire Insurance Rebate monies through the parish government.
It is the position of the former chief that the records of these previous fires, financial records of the non-profit corporation and any other documents removed from the fire department offices are the records of the Roseland Volunteer Fire Department, Inc. and are not municipal or public records and that the Town and its current municipal fire department have no rights to nor any access to these records.
They also assert that the equipment removed from the Town Hall was purchased with these non-profit corporation funds from and by checks issued on the account of the Volunteer Fire Department, Inc. and as such are not municipal property but that of the non-profit corporation.
Finally, it is the position of the former Fire Chief and his supporters within the Volunteer Fire Department, Inc. that the banking account in the name of the non-profit corporation *Page 2 
are funds separate and distinct and the exclusive property of the membership of the non-profit corporation and are not subject to use by nor audit by the municipal government.
You maintain that the municipal government should have access to and custody of all fire records, whether in the name of the municipality or the non-profit corporation in that these are public records, and that all items purchased for the Volunteer Department, whether through tax dollars, private donations and fund raisers are in fact for the benefit of and belong to the municipal fire department. Accordingly, all items of property and equipment should be inventoried and located at the municipal fire department facility, and funds having been received for the implied purpose of being utilized in connection with fire protection services of the Town cannot be used for any other purpose. Since the non-profit corporation is no longer providing fire protection services, these funds should be transferred to the municipal fire account at the Town of Roseland.
Based upon these facts you ask the following questions:
 1) What rights does the Town of Roseland's municipal government have to seek complete review and audit of the financial records of the Roseland Volunteer Fire Department, Inc.?
 2) What rights does the Town of Roseland's municipal government have to obtain possession of or access to the fire records in possession of the Roseland Volunteer Fire Department, Inc.?
 3) What rights does the Town of Roseland's municipal government have to obtain possession of and use of fire equipment and/or other equipment purchased by or through the Roseland Volunteer Fire Department, Inc.?
 4) What rights does the Town of Roseland have to obtain possession of and/or control of the banking accounts of the Roseland Volunteer Fire Department, Inc.?
We note in Atty. Gen. Op. 84-583 this office was asked if the volunteer fire department should be required to audit their books wherein the department conducted fund raisers, received donations from the public and the municipality and received revenue sharing. Based upon R.S.24:517 this office observed that it had been the opinion of this office that all quasi-pubic bodies are required to conduct and file audits, and quasi-public bodies have been defined as those bodies which are not strictly private bodies and which are "primarily" funded by public funds and serve a public purpose or provide a public service. Inasmuch as the proportionate amount of public funds received was not provided, it was stated, "Therefore, it is not possible to conclusively classify the volunteer fire department. *Page 3 
However, conceding that the volunteer fire department serves a public purpose and provides a public service, if it can be determined that it is also funded primarily by public funds, then it should conduct and file an audit."
Similarly, in Atty. Gen. Op. 98-498 in regard to the question of the mayor's authority to appoint the Fire Chief of the volunteer Fire Department this office responded that the questions to be considered are what public funds, if any, are provided, noting that it had previously been opined that a volunteer fire department may be considered a quasi-public body where it received public funds in a budget for such things as expenses of the fire department as utilities, maintenance, truck gas and repair, and other equipment, and the municipality exercises an element of control over the department. In conclusion it was stated that the status of the department is a question of fact to be reached from the guidelines set forth such as the manner in which the department was created, public funding and exercise of control, if any, by the town.
Thus, in response to your questions as to the rights of the Town to seek complete review and audit of the financial records of the Volunteer Fire Department, obtain possession to the records of the Volunteer Fire Department and its equipment, and control of the bank account, we must conclude that this must be determined on the basis if the Department is "primarily" funded by public funds in that it receives tax dollars from the Town, the Fire Protection District and Insurance Rebate monies. However, If not primarily funded by public funds, we would conclude the municipality has no rights to the documents, equipment, bank account or to require an audit of the Volunteer Fire Department simply because it serves a public purpose.
We regret we cannot be of more assistance in response to your inquiry.
 Very truly yours,
 RICHARD P. IEYOUB
 Attorney General
 BY:__________________________
 BARBARA B. RUTLEDGE
 Assistant Attorney General
 RPI/bbr *Page 1 
 ATTACHMENT
Opinion No. 90-271
March 12 1991.
Mr. Stephen E. Fertitta Secretary/Treasurer Assumption Parish Police Jury Post Office Box 518 Napoleonville, Louisiana 70390
Dear Mr. Fertitta:
Reference is made to your letter requesting an opinion from this office as to the distribution and use of tax monies for fire protection services rendered by volunteer fire departments. You state that Fire Protection District No. 1 of the Parish of Assumption (the "District") has levied a five (5) mills ad valorem tax, beginning with the year 1990, for the purpose of "acquiring, constructing, improving, maintaining and/or operating fire protection facilities and equipment in and for said District, including the purchase of fire trucks and other fire fighting equipment and payment of all related personnel costs . . ." You further state that the District is contemplating the distribution of the tax revenues to the volunteer fire departments located in the District.
In your letter, you ask the following:
 1. Can the Assumption Parish Police Jury, as governing authority of the District, distribute or transfer to each volunteer fire department within the District, a portion of its tax proceeds for the purpose of providing fire protection services within the District?
 2. If yes, would each fire department require an annual audit or what type of financial review would each volunteer fire department be subject to?
 3. Can a volunteer fire department be reimbursed for expenses it has incurred in 1990?
 Article 7, Section 14(D) of the Louisiana Constitution of 1974 states:
 "For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
In the statute setting forth the powers of fire protection districts, R.S. 40:1500(C) states: *Page 2 
 "Districts may enter into such contracts as they consider necessary or desirable to carry out the purposes for which they were created, including, specifically, contracts with private or public entities pursuant to which water for fire protection purposes shall be made available and paid for by the districts."
This office, in prior opinions, has recognized that volunteer fire departments serve a public purpose and, therefore, based upon the constitutional and statutory authority, could contract with fire protection districts to provide fire protection services. Such contracts should be reduced to writing and include such provisions as to the services to be provided, and the obligations, duties, and responsibilities of the parties. The volunteer fire departments may share in the District's tax revenues in an amount commensurate with the services to be rendered.
R.S. 24:517(A) requires that "all. . . public or quasi-public agencies or bodies or political subdivisions of the state, whose books and accounts are not required to be audited by the legislative auditor . . . shall cause to be conducted annually by a duly qualified certified public accountant an audit or examination of their books and accounts, and shall file the same with the office of the legislative auditor, within six months after the close of the fiscal year."
Furthermore, R.S. 24:517.2 requires private non-profit organizations receiving $20,000 or less in public funds in any fiscal year, to file annually with the legislative auditor a financial report for the fiscal year in lieu of an audit and examination of its books by a certified public accountant.
Opinion No. 75-124, rendered in connection with the legality of political subdivisions paying dues to professional associations, stated that an association which receives as its primary source of income dues paid from appropriated public funds, and serves a public purpose and renders a public service, as it must to receive such appropriated funds, is a quasi-public body.
The following paragraphs from Opinion No. 75-124, although relating to the quasi-public nature of an association, seem equally applicable and relevant to a volunteer fire department:
 "Another conclusion flows when an association has as its primary source of income dues paid from public funds by public officials or agencies as membership subscriptions, and serves a public purpose and renders a public service. We are compelled to conclude that these facts would bring such an association under the general prohibitions on use of public funds found in the Constitution and laws of Louisiana.
 "For example, such an association would be prohibited under Article VII, Section 14 (A) of the new Constitution from loaning or donating their funds to private persons. Such a loan or donation would be doing indirectly with state funds what is *Page 3 
clearly prohibited directly. It is axiomatic that such indirect loans or donations are prohibited if direct loans or donations are prohibited
 "In summary then, this office is of the opinion that associations may receive public funds in the form of dues paid by state officials and agencies for membership in an association, provided that the association serves a public purpose and renders a public service and provided the service rendered is commensurate with the amounts of dues paid. In addition, the funds received must be used within the prohibitions on the use of state funds found in the Constitution and laws of Louisiana . . ."
Since the volunteer fire department will receive public funds, serves a public purpose and renders a public service, and thus is a quasi-public body, we are of the opinion that it is obligated to file with the legislative auditor an annual audit or financial statement as required by R.S. 24:517(A) or R.S. 24:517.2, as the case may be.
The tax proposition approved by the electors of the District provides that the tax would commence in the year 1990. With limited exceptions, ad valorem taxes are collected in arrears at the end of a year for operation and maintenance costs incurred in such year. We are of the opinion that the 1990 tax revenues may be used to pay any costs or expenses incurred in 1990 for providing fire protection services.
We hope that the foregoing answers your questions, and if further assistance is required, please do not hesitate to contact us.
 Yours truly,
 WILLIAM J. GUSTE, JR.
 ATTORNEY GENERAL
 BY:__________________________
 Gunther R. Michaelis
 Special Assistant Attorney General
 GRM:btw *Page 1 
 ATTACHMENT
OPINION NUMBER 84-583
January 4, 1985.
71 . . . Municipalities
78 . . . Officers — Dual Office Holding
LSA-R.S. 42:62, 42:63, 33:423, 24:517
Honorable Edward Hughes Mayor, Village of Slaughter Post Office Box 8 Slaughter, Louisiana 70777
Dear Mayor Hughes:
You requested an opinion from this office concerning the propriety of certain actions of the municipality and/or its officers.
In your first question you asked if an elected alderman could also serve as a deputy marshall without pay or compensation. LSA-R.S. 42:63
provides, in pertinent part, that:
 D. No person holding an elective office in a political subdivision of this state shall at the same time hold another elective office.
LSA-R.S. 42:62 provides, in part, as follows:
 (2) "Appointive office" means any office in any branch of government or other position on an agency, board, or commission or any executive office of any agency, board, commission, or department which is specifically established or specifically authorized by the constitution or laws of this state or by the charter or ordinances of any political subdivision thereof and which is filled by appointment or election by an elected or appointed public official or by a governmental body composed of such officials of this state or of a political subdivision thereof.
 (3) "Employment" means any job compensated on a salary or per diem basis, *Page 2 
other than an elective or appointive office, in which a person is an employee of the state government or of a political subdivision.
In accordance with the statute quoted above, an elected official of a political subdivision of this state shall not at the same time hold a full-time appointive office in the same political subdivision for which he holds an elective office nor shall he be employed by said political subdivision. The appointment of municipal personnel is addressed in LSA-R.S. 33:423. It provides, in pertinent part:
 In those municipalities governed by the provisions of R.S. 33:321 through R.S. 33:481 which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and the board of aldermen for appointment of police personnel. Such nominations or recommendations are to be made iriregardless of race, color, or creed.
Although the alderman may not be receiving compensation for the performance of his dutes as deputy marshall, the position can be considered as an appointive one and therefore presents a dual office holding problem. This situation also presents a possible Ethics Code violation. Thus, I suggest that you pose this question to the Board of Ethics for Elected Officials at 7434 Perkins Road, Suite B, Baton Rouge, Louisiana 70808-4379.
You also asked for an opinion on the purchasing of gas by a municipality from a business owned by the mayor. This question also poses a possible Ethics Code violation. Therefore, I suggest that you also direct it to the attention of the Board of Ethics at the address given above.
In your last question, you asked if the volunteer fire department should be required to audit their books. You stated that the department conducts fund raisers, receives donations from the public and the municipality and it also receives revenue sharing.
LSA-R.S. 24:517 provides, in part, as follows:
 A. Each municipality, except as otherwise provided herein, and all other *Page 3 
public or quasi-public agencies or bodies or political subdivisions of the state whose books and accounts are not authorized to be audited by the legislative auditor, except those whose books and accounts are audited by internal auditors of a parish governing body or authority and whose audits are filed with the office of the legislative auditor, shall cause to be conducted annually, by a duly qualified certified public accountant, and audit and examination of their books and accounts. They shall file the same with the legislative auditor within six months after the close of the period audited, except that the audit and examination of the books and accounts of local housing authorities shall be conducted and filed not less than once every two years, and an audit prepared by an agency of the federal government may be filed in lieu of an audit prepared by a certified public accountant. . .
Applying the statute quoted above, it has been the opinion of this office that all quasi-public bodies are required to conduct and file audits. Quasi-public bodies have been defined as those bodies which are not strictly private bodies and which are primarily funded by public funds and serve a public purpose or provide a public service. You failed to state proportionately the amount of public funds received by the volunteer fire department. Therefore, it is not possible to conclusively classify the volunteer fire department. However, conceding that the volunteer fire department serves a public purpose and provides a public service, if it can be determined that it is also funded primarily by public funds, then it should conduct and file an audit.
It is hoped that this opinion has been of some *Page 4 
assistance to you. If we may be of any further assistance, please feel free to contact us.
 Very truly yours,
 WILLIAM J. GUSTE, JR.
 Attorney General
 BY:__________________________
 CASSANDRA A. SIMMS
 Assistant Attorney General
 CAS/vf *Page 1 
 ATTACHMENT
OPINION NO. 91-162
August 27, 1991.
90-A-1 — PUBLIC FUNDS AND CONTRACTS
La.Const. Art. VII, Sec. 14
Public funds received by volunteer fire department may be used to establish and maintain a retirement plan.
Chief Faron Dube Garyville Volunteer Fire Department P.O. Box 553 Garyville, LA 70051
Dear Chief Duhe:
We have received your opinion request relating to the use of sales tax revenues appropriated by St. John the Baptist Police Jury to the Garyville Volunteer Fire Department (the "Department"). You stated in your letter that the Department is funded annually from a portion of the proceeds of a one-fourth percent (1/4%) sales tax levied in the Parish to provide fire protection throughout the Parish and . . . ."to pay the operation and maintenance cost of fire fighting personnel, including salaries . . . .". You ask if a portion of said tax paid to the Department may be used to establish and maintain a "nonqualified" retirement plan for the benefit of its volunteer fire fighters.
This office has recognized the legality of police jury contributions to volunteer fire departments as not being violative of Article VII Section 14 of the Louisiana Constitution of 1974. Such contributions in actuality are payments for fire protection services rendered by the volunteer fire departments. See Attorney General Opinion No. 78-236. In Attorney General Opinion No. 90-271 this office stated that a volunteer fire department is a quasi-public body since it receives public funds, serves a public purpose and renders a public service. Attorney General Opinion No. 75-124, relating to the use of funds received by quasi-public bodies states ". . . . the funds received must be used within the prohibitions on the use of state funds found in the Constitution and laws of Louisiana . . . .".
We have reviewed the state constitution and various state statutes, as they may relate to volunteer fire departments and their use of public funds, and do not find any legal prohibition to the use by the Department of its revenues in the manner proposed. Therefore, based upon our examination of relevant law *Page 2 
on the subject, it is our opinion that the funding of the proposed retirement plan by the Department may be accomplished.
 Yours truly,
 WILLIAM J. GUSTE, JR.
 ATTORNEY GENERAL
 BY:__________________________
 Gunther R. Michaelis
 Special Assistant Attorney General
 GRM:jal *Page 1 
 ATTACHMENT
OPINION NO. 07-0152
April 4, 2008.
WATER DISTRICTS
R-S. 24:517
Transylvania Water Assc falls within definitior of quasi-public body are therefore comes within the statutory audit requirement.
Mr. A. J. Johnson, President Transylvania Water Association Route 1 Transylvania, Louisiana 71226
Dear Mr. Johnson,
Your opinion request of August 28, 19/8 has been assigned to me for reply. As I appreciate it, your question
 1. Does the Transylvania Water Association Come within the statutory audit requirement?
The Transylvania water Association falls squarely within the definition of a quasi-public body according to Reports of the Attorney General, No. 75-124, April 7, 1974, pagei 216, paragraph 3 . . . . Quasi-public bodies are those bodies which are not strictly private bodies. Strictly private bodies are those whose "direct objective is to promote private interests, and in "which the public has no concern, . . . . [which] derive[s] nothing from the government, except the right to be corporations . . . . ." State v. Riverside Irrigation Co., 142 La. 10, 13,76 So. 216, 218 (1917).
All quasi-public bodies come within the statutory audit requirement of La.R.S. 24:517, consequently the Transylvania Water Association shall cause to be conducted annually by a duly qualified certified public accountant an audit and examination of their books and accounts and shall file the same with the legislative auditor within six months after the close of the period audited.
These reports are subject to public inspection.
 I hope that the foregoing has sufficiently answered *Page 2 
your question, and if you need further assistance, please contact this office.
 Sincerely,
 WILLIAM J. GUSTE, JR.
 Attorney General
 BY:__________________________
 VERNON CLAVILLE
 Staff Attorney
 WJG/VC/ebn
[1] R.S. 33:2531 states:
§ 2531. Mandatory civil service in certain municipalities, parishes and districts Permanent appointments and promotions for paid firemen and policemen in the classified civil service and enumerated herein in all municipalities having a population of not less than seven thousand and not more than thirteen thousand, according to the last preceding decennial census of the United States for which the final report of population returns have been printed, published and distributed by the director of the census or according to a special census authorized by R.S. 1:11.1 subject to the approval of the local governing authority and verified by the state treasure if said special census is later, and in all parishes and fire protection districts, shall be made only after certification pursuant to a general system based upon merit, efficiency and fitness, under which certificates shall be based on examinations which, so far as practical, shall be competitive, and all employees in the classified service shall be employed from those eligible under such certification.
[1] Of concern in Heintz was the predicate issue of whether the municipality operated a "regularly paid fire department", which we understand is not at issue in the current matter.